

CV    04   - 1101

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

DAVID McANANEY and CAROLYN : 
McANANEY, individually and on behalf of :  CIVIL ACTION No.
all others similarly situated, :

                     Plaintiffs, :

        v. :  **CLASS ACTION COMPLAINT**

ASTORIA FINANCIAL CORPORATION, :
ASTORIA FEDERAL SAVINGS AND LOAN :
ASSOCIATION, ASTORIA FEDERAL :  JURY TRIAL DEMANDED
MORTGAGE CORPORATION, LONG ISLAND :
BANCORP, INC. AND LONG ISLAND :  **SPATT, J.**
SAVINGS BANK, FSB, :

               Defendants. :  **WALL, M.J.**

-------------------------------------------------------------------X

     Plaintiffs David McAnaney and Carolyn McAnaney ("Plaintiffs"), individually and on

behalf of all others similarly situated, for their complaint against Astoria Financial Corporation

("Astoria Financial"), Astoria Federal Savings and Loan Association ("Astoria Federal"), Astoria

Federal Mortgage Corporation ("Astoria Federal Mortgage"), Long Island Bancorp, Inc. ("LIB")

and Long Island Savings Bank, FSB ("Long Island Savings") (collectively "Defendants"), allege

upon information and belief, except as to the allegations which pertain to Plaintiffs and their

counsel which claims are based on personal knowledge, as follows:

### INTRODUCTION

    1.     Defendants engage in the practice of mortgage banking in New York and other

States.  This practice involves initiating or originating loans, keeping a small number of those

loans for their own portfolio and "reselling" the large majority to the Federal Home Loan

Mortgage Corporation ("FHLMC"), the Government National Mortgage Association ("GNMA") and Federal National Mortgage Association ("FNMA").

2.      When applying for their mortgage from Defendants, Plaintiffs and the Class received standard form mortgage contracts from Defendants, which specified what fees, if any, Defendants' could charge for the processing, satisfaction, discharge and recording of loans, among other fees and costs.

3.      Defendants required that Plaintiffs and the Class sign standard mortgage contracts. These form mortgage contracts were drafted by Defendants and contained the parties' rights and obligations.

4.      In these mortgage contracts, Defendants state the mortgagor (here Plaintiffs and the Class) "will not be required to pay lender for the discharge." The contract states further that mortgagor "will pay the cost of recording the discharge in the proper official records."

5.      The mortgage contracts also contained a standard form Rider, which states that mortgagor will have to pay all reasonable fees relating to the mortgage including, but not limited to, satisfaction of the mortgage. At the bottom of this rider is a bold-faced heading that reads: **"RIDER VOID IF SECURITY INSTRUMENT SOLD TO FNMA, GNMA OR FHLMC."**

6.      Defendants routinely charge consumers fees and charges not permitted by the mortgage contracts, for loans resold by Defendants to FNMA, GNMA and FHLMC.

7.      At the time of satisfaction of the mortgage loans, Defendants, acting as the "servicer" and debt collector of mortgage loans that have been largely sold by Defendants to FNMA, GNMA or FHLMC, present the mortgagors with a statement containing the amount necessary to pay-off the mortgage debt and for various fees and charges imposed and collected

by Defendants. Some of these fees relate to discharge of the mortgage, and are thus improper under the contracts and other applicable laws.

8.      Defendants do not tell their mortgage consumers that they resell almost all of the mortgage loans they originate to FNMA, GNMA and FHLMC. As a result, Plaintiffs and the Class of consumers remain largely unaware that the fees, charges and debts Defendants impose and collect are improper under the mortgage contracts.

9.      Defendants acted deceptively, unfairly, intentionally and recklessly to further their scheme to collect unearned and improper fees and charges from Plaintiff and the Class of consumers. Defendants also misrepresented and/or omitted material facts in mortgage and loan documents given to Plaintiffs and the Class.   Plaintiffs and the Class were injured as a result of Defendants' acts, practices and conduct.

10.     Plaintiffs and the Class seek damages and equitable relief for Defendants' past and continuing violations of the Truth In Lending Act, 15 USCA §1601 *et seq.* ("TILA"), the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 *et. seq.* ("RESPA"), the Fair Debt Collections Act ("FDCA"), 15 U.S.C. 1692, *et seq.*, the New York General Business Law ("GBL") §349 and the similar consumer protection laws of other states, breach of contract, common law fraud and unjust enrichment.

## JURISDICTION AND VENUE

11.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 15 U.S.C. §1640(e), 15 U.S.C. §1692k(d) and 12 U.S.C. §§

2607(d) and 2614.   This Court has supplemental jurisdiction over Plaintiffs' State law and common law claims pursuant to 28 U.S.C. '1367(a).

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants maintain their principal place of business in this District and at all times conducted substantial business in this District.

## TRADE AND COMMERCE

13.     In connection with Defendants' origination, sale, solicitation, and resale of mortgage loans, monies as well as contracts, bills and other forms of business communications and transactions were transmitted in a continuous and uninterrupted flow across state lines.

14.     Various means and devices were used to effectuate the violations of law and conspiracy alleged herein, including the United States mail, interstate travel, interstate telephone commerce and other forms of interstate electronic communications.   The activities of Defendants alleged herein were within the flow of, and have substantially affected, interstate commerce.

## PARTIES

**Plaintiffs**

15.     Plaintiffs David R. McAnaney and Carolyn E. McAnaney ("Plaintiffs") are residents of Suffolk County, New York and were mortgagors of Long Island Savings commencing in February 1993.   In a letter and statement dated November 18, 2002, Plaintiffs received a letter from Astoria Federal listing the "amount necessary to satisfy the above mortgage" and listing other fees and charges imposed by Defendants.   Included among those fees and charges was an "Atty Doc Prep Fee" of $125.00 and a "Facsimile Fee" of $25.00.   Plaintiffs paid these fees, unaware that such payments were not due to Defendants, and have been injured

4

as a result of Defendants' deceptive, false and misleading acts and practices and breach of its mortgage contract. Defendants had previously sold Plaintiffs' mortgage to the FNMA.

**Defendants**

16.  Astoria Financial is a Delaware corporation with its principle place of business and headquarters located at One Astoria Federal Plaza, Lake Success, New York. It is a bank holding company registered under the Bank Holding Company Act, a unitary savings and loan association holding company under the Home Owners Loan Act and a federally chartered thrift. Astoria Financial's primary business is the operation of its wholly-owned subsidiary, Astoria Federal.

17.  Astoria Federal is a national bank headquartered in Wilmington, Delaware with its principle executive offices and place of business located at One Astoria Federal Plaza in Lake Success, New York. Astoria Federal is a member of the Federal Home Loan Bank System. Astoria Federal's principal business is attracting retail deposits from the general public and investing those deposits in one-to-four family mortgage loans originated and sold by Astoria Federal and mortgage-backed securities. Astoria Federal is a wholly-owned and controlled subsidiary of Astoria Financial.

18.  Astoria Federal Mortgage is a wholly-owned subsidiary of Astoria Federal and an indirect subsidiary of Astoria Financial. Astoria Federal Mortgage is the operating subsidiary of Astoria Federal that engages of mortgage lending activities outside the State of New York.

19.  Long Island Bancorp, Inc. ("LIB") was a federally chartered mutual savings bank under the United States laws which maintained offices in Queens, and Nassau and Suffolk

counties.  LIB also operated mortgage loan production offices across Long Island and in New Jersey, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina and Georgia.

20.     Defendant Long Island Savings was a wholly-owned savings bank subsidiary of LIB.  LIB had 35 branches, $6.58 billion in total assets, $3.58 billion in deposits and $581.0 million of stockholders' equity at September 30, 1998. Following the close of business of September 30, 1998, LIB merged into defendant Astoria Financial.  Astoria thereafter succeeded to the liabilities of LIB.

## FACTUAL ALLEGATIONS

21.     Long Island Savings was a thrift institution that was a major mortgage lender in Queens, Nassau and Suffolk counties.

22.     LIB also operated mortgage loan production offices in New Jersey, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina, Georgia and elsewhere.

23.     Astoria Financial is the second largest thrift institution headquartered in New York and the fifth largest in the United States.  As of November 19, 2003, it publicly reported assets of approximately $22.1 billion. Astoria Financial's stock is traded on the New York Stock Exchange under the symbol "AF" and has a market capitalization of approximately $2.8 billion.

24.     Astoria Federal provides retail banking, mortgage, small business and consumer loan services to 700,000 customers through 86 banking offices and 121 Automatic Teller Machines ("ATMs") located throughout Nassau, Suffolk, Queens, Kings and Westchester Counties, and multiple delivery channels, including its website.

25.     With $11.2 billion in deposits, Astoria Federal commands the third largest deposit market share in the attractive Long Island market, which encompasses Kings, Queens, Nassau

and Suffolk counties, with a combined population exceeding 38 individual states.   Astoria Federal's market share of deposits in these New York counties is 8.3%.

26.     According to Astoria Financial's Form 10-K for the year ended December 31, 2002, in 2002 alone, Astoria Financial and Federal originated or purchased mortgage loans for 1 to 4 family homes totaling $4.53 billion.  The year before, in 2001, Astoria Financial and Astoria Federal originated or purchased mortgage loans for 1 to 4 family homes totaling $3.94 billion.

27.     As of the December 31, 2002, Astoria Financial and Astoria Federal owned loans valued at $12.06 billion, including $9.21 billion (or 76.9%) that are mortgage loans on 1 to 4 family homes.

28.     Net cash provided by Astoria Financial's operating activities totaled $157.4 million during the year ended December 31, 2002 and $222.2 million during the year ended December 31, 2001.  Astoria Financial reported net income for the year ended December 31, 2002 of $248.4 million and $222.9 million for the year ended December 31, 2001.

29.     Astoria Federal and/or Long Island Savings serviced loans owned by others valued at $2.67 billion as of the end of 2002, $3.32 billion as of the end of 2001 and $3.93 billion as of the end of 2000.  Many of these loans are mortgage loans that were sold by Defendants to FNMA, GNMA or FHLMC.

30.     Astoria Federal originates mortgage loans through its banking and loan production offices in New York, commissioned brokers and representatives in 19 states (including New York, New Jersey, Connecticut, Pennsylvania, Massachusetts, Delaware, Maryland, Ohio, Virginia, North Carolina, South Carolina, Georgia, Illinois, California and Florida), and through correspondent relationships in 44 states.

31.     Astoria Federal maintains its only three Mortgage Servicing Centers in Lake Success, Babylon Village and Medford, New York.

32.     In an effort to manage risk on its loan portfolio and to expand its ability to make more loans, Defendants generally resell the mortgage loans they originate and thereafter assume the role of "servicing" the mortgages, namely collecting the monthly mortgage payments and handling customer relations for which they receive fees from the owner of the loans and the mortgagors, and other fees and charges imposed on consumers.

33.     Astoria Financial in its Form 10-Q for the period ended June 30, 2002 states that: "Since we generally sell our fifteen year and thirty year fixed rate loan production into the secondary mortgage market, the origination of such products for sale does not significantly reduce our liquidity"

34.     As Defendants admit in their SEC filings, as a rule they sell mortgages into the "secondary mortgage market." The secondary mortgage market in the United States is led by the FHLMC (also know as "FreddieMac"), the GNMA (also known as "Ginnie Mae") and FNMA (also know as "Fannie Mae").

35.     According the website maintained by FreddieMac: "America has a secondary mortgage market, led by FreddieMac, which attracts capital from around the world to finance a wide range of mortgage products designed specifically to make home ownership affordable and accessible."

36.     On the FNMA website, it states that it is "the nation's largest source of financing for home mortgages" but that it does "not lend money directly to home buyers. Instead, we work with lenders to make sure they don't run out of mortgage funds."

37.     GNMA claims that:  "Ginnie Mae has guaranteed more than $1.7 trillion in mortgage-backed securities. Historically, 95% of all FHA and VA mortgages have been securitized through Ginnie Mae."

38.     On or around February 4, 1993, Plaintiffs entered into a mortgage contract with Long Island Savings to borrow money to purchase a single-family dwelling in Suffolk County, New York.

39.     The mortgage contract was a form mortgage contract prepared by Long Island Savings and modified only on the first and last pages as to terms of amount and specifics about the borrower and the property.  The standard, form contract was titled "Form 3033 10/91."

40.     This form mortgage, or similar form mortgages, are used by Long Island Savings and Astoria Financial and Astoria Federal are titled "NEW YORK - Single Family – FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT."   On Page 6 of 6, Paragraph 22 of that contract, it states: "LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT: When lender has been paid all amounts due under the Note and this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied.  I will not be required to pay lender for the discharge, but I will pay the cost of recording the discharge in the proper official records."

41.     In Paragraph 23 of that mortgage contract, check boxes are included to note the inclusion of any riders to the mortgage.  There are boxes to denote an adjustable rate rider and a box marked "other(s)."  Both were checked for Plaintiffs' mortgage.

42.     In the attachment to the mortgage contract titled "RIDER TO MORTGAGE" (the "Rider"), the paragraph numbering continues from the last numbered paragraph in the mortgage contact.

43.     Paragraph 32 of the Rider purports to change paragraphs 21 and 2(b) of the Security instrument by allowing the lender to collect for any and all "reasonable charges in connection with the servicing of this loan including, specifically, satisfaction of Mortgage."

44.     At the bottom of this rider is a bold-faced heading that reads: **"RIDER VOID IF SECURITY INSTRUMENT SOLD TO FNMA, GNMA OR FHLMC."**

45.     Similar riders appear in mortgage contracts originated by Astoria Federal and Astoria Federal Mortgage.

46.     Following origination, Long Island Savings and/or LIB sold Plaintiffs' mortgage to FNMA.  Subsequent to that sale, Long Island Savings and then Astoria Federal acted as the servicer of that mortgage, collecting debts for the mortgage owned by FNMA.

47.     Defendants admit in their filings with the Securities and Exchange Commission and other public statements that they generally sell the mortgages they originate into the secondary market dominated by FNMA, GNMA and FHLMC.  Thus, only in the rare instances when Defendants do not sell their mortgage loans to FNMA, GNMA or FHLMC are they permitted to charge the fees, charges and finance charges relating to the servicing, discharge or satisfaction of mortgage loans.

48.     Nevertheless, contrary to the terms of their mortgage contracts with Plaintiffs and the Class, Defendants knowingly charge fees for loans serviced by them, but which were sold to FNMA, GNMA or FHLMC.

49.     Included among those fees, charges and finance charges is an "Atty Doc Prep Fee" of $125.00 and a "Facsimile Fee" of $25.00 imposed by Defendants on Plaintiffs upon the satisfaction of their mortgage originated by Long Island Savings and serviced by Astoria Federal. Defendants invoiced and collected these fees from Plaintiffs, after Defendants has sold Plaintiffs' loan to FNMA, GNMA or FHLMC

50.     Defendants imposed similar fees, charges and finance charges on other Class members after mortgage loans Defendants' originated were sold to FNMA, GNMA or FHLMC.

51.     Plaintiffs and the Class were financially injured as a direct and proximate result of Defendants' false, misleading and deceptive acts, practices and conduct described herein.

52.     To the extent that Plaintiffs and Class are not entitled to compensatory damages from Defendants, Plaintiffs and the Class have been and will continue to be irreparably injured and have no adequate remedy at law for Defendants' violations of law complained of herein.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated in the United States who had or currently have a mortgage originated or purchased by any of the Defendants and who wrongfully paid closing fees, satisfaction fees, attorney document preparation fees, facsimile fees and other fees in contravention of the mortgage contract or applicable laws (the "Class"). Excluded from the Class are Defendants, their parents, subsidiaries, officers, directors, employees, partners and co-venturers.

54.     This action is brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, sub-sections 23(a) and 23(b)(2) and/or (b)(3). The Class

satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23

55. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members can be determined only by appropriate discovery, Plaintiffs believe that members of the Class number at least in the hundreds of thousands of persons, in New York and throughout the United States.

56. Because of the geographic dispersion of class members, there is judicial economy arising from the avoidance of a multiplicity of actions in trying this matter as a class action.

57. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests that are adverse or antagonistic to those of the Class. Plaintiffs' interests are to obtain relief for themselves and the Class for the harm arising out of the violations of law set forth herein.

58. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex and consumer class action litigation.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by the members of the Class may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiffs and members of the Class to individually seek redress for the wrongful conduct alleged.

60.     In addition, Defendants have acted and refused to act, as alleged herein, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or corresponding with respect to the Class as a whole.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated TILA;

(b)     whether Defendants violated RESPA;

(c)     whether Defendants violated FDCA;

(d)     whether Defendants violated GBL §349 and/or the similar consumer practice statutes of other states;

(e)     whether Defendants' acts and practices were false, misleading and/or deceptive;

(f)     whether Defendants breached their contractual obligations to Plaintiffs and the Class;

(g)     whether Defendants acted willfully or recklessly in failing to abide by the terms of their agreements with Plaintiffs and the Class;

(h)     the proper measure of damages to be paid to Plaintiffs and the Class;

(i)     whether Plaintiffs and the Class are entitled to injunctive or other equitable relief to remedy Defendants' continuing violations of law alleged herein; and

13

(j)     whether Defendants have been unjustly enriched by their inequitable and unlawful conduct, and if so, whether Defendants should be forced to disgorge inequitably obtained revenues or provide restitution.

62.     The Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation.

63.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I

### (Violations of TILA)

64.     Plaintiffs repeat and reallege paragraphs 1 through 63 as though set forth herein.

65.     Plaintiffs and each Class member is a "person" as that term is defined in 15 U.S.C. §1602(d) and a "consumer" as that term is defined in 15 U.S.C. §1602(h).

66.     Defendants are each "creditors" as that term is defined in 15 U.S.C. §1602(f).

67.     The mortgage loans originated and sold by Defendants to Plaintiffs and the Class are consumer credit transactions, and also "residential mortgage transactions" as that term is defined in 15 U.S.C. §1602(w).

68.     The term "finance charge" is defined, in pertinent part, in 15 U.S.C. §1605(a) as "the sum of all charges, payable directly or indirectly by the persons to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."

14

69.     TILA requires in 15 U.S.C. §1638 that creditors accurately, correctly and truthfully disclose the "finance charge" to consumers in all consumer credit transactions and in all residential mortgage transactions.

70.     TILA requires in 15 U.S.C. §1638 that creditors provide a good faith estimate of all "finance charges" to consumers in all residential mortgage transactions.

71.     As alleged herein, Defendants did not accurately, correctly and truthfully disclose and did not provide good faith estimates of the amount of finance charges in their consumer credit transactions and residential mortgage transactions with Plaintiffs and the Class, in violation of 15 U.S.C. §1638.

72.     Defendants' acts, practices and conduct constitute *per se* violations of TILA. Even if not *per se* violations, Defendants' acts, practices and conduct violate TILA.

73.     Plaintiffs and the Class have been injured as a result of Defendants' violations of 15 U.S.C. §1638.

74.     Plaintiffs are entitled to pursue an action and a class action against Defendants pursuant to 15 U.S.C. §1640 to redress Defendants' violations of 15 U.S.C. §1638.

## COUNT II

### (Violations of RESPA.)

75.     Plaintiffs repeat and reallege paragraphs 1 through 63 as though set forth herein.

76.     Plaintiffs and each Class member is a "person" as that term is defined in 12 U.S.C. §2602(5).

77.     The mortgage loans originated and sold by Defendants to Plaintiffs and the Class are "federally related mortgage loans" as that term is defined in 12 U.S.C. §2602(1).

15

78.     Defendants provided "settlement services" to Plaintiffs and the Class, as that term is defined in 12 U.S.C. §2602(3).

79.     12 U.S.C. §2607(b) of RESPA states, in relative part, that:  "no person shall give and no person has accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

80.     12 U.S.C. §2610 prohibits a lender or servicer from imposing any fee or charge "for or on account of the preparation and submission by such lender or servicer of the statement or statements required (in connection with such loan) by sections 2603 and 2609(c) of this title or by the Truth in Lending Act (15 U.S.C. 1601 *et seq.*)."

81.     As alleged herein, Defendants imposed fees and charges on Plaintiffs and the Class for settlement services not provided, which Defendants' mortgage contracts stated would not be charged in connection with the resale and satisfaction of federally related mortgage loan sold by Defendants to Plaintiffs and the Class, or which are prohibited by RESPA.

82.     Defendants also violated RESPA by collecting "unearned fees" from the discharge of the mortgage loans sold to Plaintiffs and the Class.

83.     Defendants' acts, practices and conduct constitute *per se* violations of RESPA. Even if not *per se* violations, Defendants' acts, practices and conduct violate RESPA.

84.     Plaintiffs and the Class have been injured as a result of Defendants' violations of 12 U.S.C. §§ 2607 and 2610.

85.     Plaintiffs are entitled to pursue an action and a class action against Defendants pursuant to 12 U.S.C. §2607(d) and of 15 U.S.C. §1610 to redress Defendants' violations of RESPA.

## COUNT III

### (Violations of FDCA)

86.     Plaintiffs repeat and reallege Paragraphs 1 through 63 as though set forth herein.

87.     Plaintiffs and each Class member is a "consumer" as that term is defined in 15 U.S.C. §1692a(3).

88.     All Defendants included in this Count I are "debt collectors" as that term is defined in 15 U.S.C. §1692a(6), insofar as those persons and entities collect the mortgage debts and other fees and charges from consumers ultimately owed to others.

89.     15 U.S.C. §1692e states as follows:   "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

90.     15 U.S.C. §1692g states as follows: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

91.     As alleged herein, Defendants have employed false, deceptive and misleading representations in order to induce consumers to pay fees, charges and debts not owed in connection with the satisfaction, discharge and repayment of their mortgage debts.  Defendants and their affiliates.  Such conduct violates 15 U.S.C. §1692(e).

92.     As alleged herein, Defendants have employed unfair and unconscionable means in order to induce consumers to pay fees, charges and debts not owed in connection with the

satisfaction, recording and repayment of their mortgage debts. Such conduct violates 15 U.S.C. §1692g.

93.     Plaintiffs and the class have been injured as a result of Defendants' violations of 15 U.S.C. §§ 1692e and 1692g.

94.     Plaintiffs are entitled to pursue a claim against Defendants pursuant to 15 U.S.C. § 1692k to redress Defendants' violations of 15 U.S.C. §§ 1692e and 1692g.

## COUNT IV

### (Violations of New York GBL §349 and Similar Laws of Other State)

95.     Plaintiffs repeat and reallege paragraphs 1 through 63 as though set forth herein.

96.     Plaintiffs and the Class are "persons" within the meaning of GBL §349(h).

97.     GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

98.     As alleged herein, Defendants engaged in deceptive acts and practices in the form of misrepresentations and omissions during the conduct of business in and from New York in violation of GBL §349(a).

99.     Defendants knew or should have known that their acts, practices, statements, correspondence, invoices and representations, as discussed above, were false and likely to deceive and mislead Plaintiff and the Class members.

100.   Plaintiff and the Class members have been injured as a result of Defendants' violations GBL §349(a).

18

101.   Defendants' deceptive and misleading acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the other members of the Class.

102.   Plaintiff is entitled to pursue a claim against Defendants pursuant to GBL §349(h) to redress their violations of GBL §349(a).

103.   Defendants' deceptive and unfair trade practices have also violated the consumer protection statutes in states other than New York, causing injury and permitting redress by those class members residing outside of New York.

## COUNT V

### (Breach of Contract)

104.   Plaintiffs repeat and reallege paragraphs 1 through 63 as though set forth herein.

105.   Plaintiffs and the other members of the Class accepted Defendants offer to borrow monies through mortgages upon the terms stated in the mortgage contracts drafted by Defendants.

106.   In these contracts, Defendants represented and agreed that Plaintiffs and the Class would not be charged certain fees if their mortgage loans were sold to FNMA, GNMA or FHLMC, but in fact did charge those fees for loans sold by Defendants to FNMA, GNMA and FHLMC.

107.   By reason of Defendants' breaches, Plaintiffs and the Class suffered financial injuries.

19

## COUNT VI

### (Common Law Unjust Enrichment)

108.   Plaintiffs repeat and reallege paragraphs 1 through 63 as though set forth herein.

109.   As alleged herein, Defendants have unjustly benefited from their unlawful and inequitable acts resulting in the payment of money by Plaintiff and the Class members.

110.   Defendants have and are continuing to derive profits and revenues resulting from their false, misleading, deceptive, unfair and inequitable conduct.

111.   It would be inequitable for Defendants to be permitted to retain any of the proceeds derived as a result of their unlawful conduct.

112.   Defendants should be compelled to provide restitution and to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and the Class, all proceeds received by them from any unlawful or inequitable act described in this Complaint which has inured and continues to inure to the unjust enrichment of Defendants.

113.   Defendants should also be enjoined from continuing to engage in any unlawful or inequitable act alleged in this Complaint.

114.   Plaintiffs and the Class have no adequate remedy at law for their irreparable injuries caused by Defendants' inequitable conduct.

## COUNT VII

### (Common Law Fraud)

115.    Plaintiffs repeat and reallege paragraphs 1 through 63 as though set forth herein.

116.    As alleged herein, Defendants intentionally, knowingly and recklessly charged and collected fees for services that Defendants' contracts unambiguously stated would not be charged.

117.    Defendants drafted the mortgage contracts, possessed superior bargaining power and knowledge as to their mortgage transactions with Plaintiffs and the Class. Defendants used such unequal benefits to take advantage and defraud consumers into paying fees and charged Defendants' know were not owed to Defendants.

118.    Plaintiffs and the other members of the Class paid these fees in reliance upon the various statements, representations, and omissions of material fact made by Defendants. Those statements, representations, and omissions were made for the purpose of inducing reliance thereon by Plaintiffs and the Class to pay fees not due to Defendants. Defendants' knowing misrepresentations, misleading statements, and omissions of material fact by Defendants included, but were not limited to, those alleged in this Complaint.

119.    Plaintiffs and the other members of the Class had a right to rely on, and did reasonably rely on, Defendants' statements, misrepresentations, and omissions. Each of Defendants' misrepresentations, and omissions were material, in that Plaintiffs and the Class would not have paid the improper fees and charges if they had known that the statements and representations of Defendants were false, misleading, incomplete, unfair and untrue.

120.    Each of the above misrepresentations, misleading statements, and omissions made by Defendants were false, misleading, incomplete, and untrue, and were known or should have been known by Defendants to be false, misleading, incomplete, and untrue when made.   Each misrepresentation, misleading statement, and omission was made with intent to deceive and defraud, or to conceal the truth about Defendants' deceptive billing practices or with disregard for its truth or completeness, or in spite of the fact that it was untrue.   Each misrepresentation, misleading statement, and omission was made to induce Plaintiffs and the Class to pay fees and charges not due Defendants.

121.    Plaintiffs and the other members of the Class had no knowledge of the falsity, incompleteness, or untruth of the statements and representations of Defendants when they paid these fees and charges to Defendants.

122.    By reason of Defendants' misrepresentations, misleading statements, and omissions, Plaintiffs and the other members of the Class suffered financial injuries.

123.    The conduct of Defendants in perpetrating the fraud described above was malicious, willful, wanton, and oppressive, or in reckless disregard of the rights of Plaintiffs and the other members of the Class, thereby warranting the imposition of punitive damages against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants, jointly and severally, as follows:

(1)    certifying the Class pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, certifying Plaintiffs as representatives of the Class and designating their counsel as counsel for the Class;

(2)    Awarding Plaintiffs and the Class compensatory damages

(3)    Awarding Plaintiffs and the Class statutory and exemplary damages where permitted;

(4)    Permanently enjoining Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

(5)    Declaring that Defendants have engaged in the unlawful and inequitable conduct  alleged herein;

(6)    Ordering Defendants to disgorge into a common fund or a constructive trust all monies paid by Plaintiffs and the Class to the full extent to which Defendants were unjustly enriched by their unlawful and inequitable conduct alleged herein;

(7)    Granting Plaintiffs and the Class the costs of prosecuting this action, together with interest and reasonable attorneys' and experts' fees; and

(8)    Granting such other relief as this Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiffs and the Class demand a trial by jury on all issues so triable.

Dated: Manhasset, New York
        March 16, 2004

                              **WHALEN & TUSA, P.C.**

                              Joseph S. Tusa (JT 9390)
                              Paul C. Whalen
                              90 Park Avenue
                              New York, NY 10016
                              Tel. (212) 786-7377
                              Fax. (212) 658-9685

                                    - and –

                              565 Plandome Road,
                              Suite 212
                              Manhasset, NY 11030

                              **G. OLIVER KOPPELL, ESQ.**
                              G. Oliver Koppell (GK 4851)
                              99 Park Avenue, Suite 800
                              New York, NY 10016
                              Tel: (917) 368-0400
                              Fax. (212) 973-9494

                              Attorneys for Plaintiffs