IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID McANANEY, CAROLYN McANANEY, JOHN REILLY, CONSTANCE REILLY, PHILIP RUSSO and CYNTHIA RUSSO individually and on behalf of all others similarly situated, | Civil Action No. CV-04-1101<br><br>Hon. Arthur D. Spatt, USDJ<br>Hon. William D. Wall, USMJ |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| ASTORIA FINANCIAL CORPORATION, ASTORIA FEDERAL SAVINGS AND LOAN ASSOCIATION, ASTORIA FEDERAL MORTAGE CORPORATION, LONG ISLAND BANCORP, INC. AND LONG ISLAND SAVINGS  BANK, FSB, | |
| Defendants. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs David McAnaney, Carolyn McAnaney, John Reilly, Constance Reilly, Philip Russo and Cynthia Russo ("Plaintiffs"), individually and on behalf of all others similarly situated, for their complaint against Astoria Financial Corporation ("Astoria Financial"), Astoria Federal Savings and Loan Association ("Astoria Federal"), Astoria Federal Mortgage Corporation ("Astoria Federal Mortgage"), Long Island Bancorp, Inc. ("LIB") and Long Island Savings Bank, FSB ("Long Island Savings") (collectively "Defendants"), allege upon information and belief, except as to the allegations which pertain to Plaintiffs and their counsel, which claims are based on personal knowledge, as follows:

1

## INTRODUCTION

1.      Defendants engage in the practice of mortgage banking in New York and other States.  This practice involves initiating or originating loans, keeping a small number of those loans for their own portfolio and "reselling" the large majority to the Federal Home Loan Mortgage Corporation ("FHLMC"), the Government National Mortgage Association ("GNMA") and Federal National Mortgage Association ("FNMA").

2.      When applying for their mortgage from Defendants, Plaintiffs and the Class received standard form mortgage contracts from Defendants, which specified what fees, if any, Defendants could charge for the processing, satisfaction, discharge and recording of loans, among other fees and costs.  These form mortgage contracts were drafted by Defendants and contained the parties' rights and obligations, as constrained by applicable law.

3.      In these mortgage contracts, Defendants state the mortgagor (here Plaintiffs and the Class) "will not be required to pay lender for the discharge."  The contract states further that mortgagor "will pay the cost of recording the discharge in the proper official records."

4.      The mortgage contracts also contained a standard form Rider, which states that mortgagor will have to pay all reasonable fees relating to the mortgage including, but not limited to, satisfaction of the mortgage.  At the bottom of this rider is a bold-faced heading that reads: "**RIDER VOID IF SECURITY INSTRUMENT SOLD TO FNMA, GNMA OR FHLMC**."

5.      Defendants routinely charge consumers fees and charges not permitted by the mortgage contracts, for loans resold by Defendants to FNMA, GNMA and FHLMC.  As admitted in their Memorandum of Law in support of their motion to dismiss the original complaint in this action and in the affidavit of an Astoria Federal Vice President, Defendants

2

admitted to having actual knowledge that these fees are improperly charged and collected. Defendants, however, routinely charge and collect them anyway.

6.      The fees and debts improperly charged and collected, are in practice and practical effect additional finance charges, prepayment penalties, refinancing penalties and payoff fees levied by Defendants onto consumers that pay-off mortgages prior to maturity.

7.      At the time of satisfaction of the Classes' mortgage loans, Defendants, acting as the "servicer" and debt collector of mortgage loans that have been resold by Defendants predominantly to FNMA, GNMA or FHLMC, present the mortgagors with a statement containing the amount necessary to pay-off the mortgage debt and for various fees, charges and debts imposed and collected by Defendants.  Some of these fees relate to discharge, satisfaction or prepayment of the mortgages, and are thus improper under the contracts and other applicable laws.  Other charges concern mortgage recording fees, and were improperly charged to the extent Defendants did not timely record the mortgage satisfactions in accordance with state law.

8.      Defendants do not tell their mortgage consumers that they resell almost all of the mortgage loans they originate to FNMA, GNMA and FHLMC.  Nor do Defendants inform Plaintiffs and Class when Defendants charge and collect improper and unlawful fees.  To the contrary, Defendants routinely make affirmative misrepresentations about such fees.  Further, Defendants fraudulently conceal the reason that Defendants are forced to return monies to Class members from fees that are routinely and unlawfully charged and collected.  As a result of Defendants' misrepresentations and omissions, Plaintiffs (until recently) and many Class members remain reasonably unaware that the fees, charges and debts Defendants impose and collect are improper under the mortgage contracts drafted by Defendants and applicable law.

3

9.     Defendants acted and continue to act deceptively, unfairly and fraudulently to further their scheme to collect unearned and improper fees, charges and false debts from Plaintiffs and the Class of consumers.  Defendants also misrepresented and/or omitted material facts in standardized mortgage and loan documents given to Plaintiffs and the Class.   Plaintiffs and the Class were injured as a result of Defendants' acts, practices and conduct.

10.     Plaintiffs and the Class seek damages and equitable relief for Defendants' continuing and past violations of the Truth In Lending Act, 15 USCA §1601 *et seq.* ("TILA"), the Home Ownership and Equal Protection Act, 15 U.S.C. §1639 ("HOEPA"), the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 *et. seq.* ("RESPA"), the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. 1692, *et seq.*, the New York General Business Law ("GBL") §349 and the similar consumer protection laws of other states, breach of contract, common law fraud, unjust enrichment, New York Real Property Actions & Proceedings Law §1921 and New York Real Property Actions & Proceedings Law §274-a.

## JURISDICTION AND VENUE

11.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States and pursuant to 15 U.S.C. §1640(e), 15 U.S.C. §1692k(d) and 12 U.S.C. §§ 2607(d), 2609, 2610, and 2614.  This Court has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. §1367(a).

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants maintain their principal place of business in this District and at all times conducted substantial business in this District.

## TRADE AND COMMERCE

13.     In connection with Defendants' origination, sale, solicitation, and resale of mortgage loans, monies as well as contracts, bills and other forms of business communications and transactions were transmitted in a continuous and uninterrupted flow across state lines.

14.     Various means and devices were used to effectuate the violations of law and conspiracy alleged herein, including the United States mail, interstate travel, interstate telephone commerce and other forms of interstate electronic communications.  The activities of Defendants alleged herein were within the flow of, and have substantially affected, interstate commerce.

## PARTIES

### Plaintiffs

15.     Plaintiffs David R. McAnaney and Carolyn E. McAnaney are residents of Suffolk County, New York and were mortgagors of Long Island Savings commencing in February 1993. In a letter and statement dated November 18, 2002, Plaintiffs received a letter from Astoria Federal listing the "amount necessary to satisfy the above mortgage" and listing other fees and charges imposed by Defendants.  Included among those fees and charges was an "Atty Doc Prep Fee" of $125.00, a "Facsimile Fee" of $25.00 and a "Recording Fee" of $64.00.  Plaintiffs David and Carolyn McAnaney paid these fees, unaware that such payments were not due to Defendants, and have been injured as a result of Defendants' deceptive, false and misleading acts and practices and breach of the mortgage contract.  Defendants had previously sold these Plaintiffs' mortgage to the FNMA.

16.     Plaintiffs John Reilly and Constance Reilly were, until recently, residents of Nassau County, New York.  They are presently residents of Florida.  They were mortgagors of

Astoria Federal commencing in March 2002.  In a letter and statement dated April 19, 2004, Plaintiffs received a letter from Astoria Federal listing the "amount necessary to satisfy the above mortgage" and listing other fees and charges imposed by Defendants.  Included among those fees and charges was an "Atty Doc Prep Fee" of $125.00 and a "Facsimile Fee" 50.00.  Plaintiffs John Reilly and Constance Reilly paid these fees, unaware that such payments were not due to Defendants, and have been injured as a result of Defendants' deceptive, false and misleading acts and practices and breach of its mortgage contract.  It is believed that Defendants had previously sold the Reilly's mortgage to FNMA, FHLMC or GNMA.

17.     Plaintiffs Philip Russo and Cynthia Russo were, until recently, residents of Suffolk County, New York.  They are presently residents of Florida.  They were mortgagors of Long Island Savings commencing in 1976.  They were also the obligors of another loan originated by Defendants that was secured by their residence.  Both loans were serviced by Long Island Savings and/or Astoria Federal.  In a letter and statement dated June 2, 2004, Plaintiffs received a letter Astoria Federal listing the "amount necessary to satisfy the above mortgage" and listing other fees and charges imposed by Defendants.  Included among those fees and charges was an "Atty Doc Prep Fee" of $125.00, a "Facsimile Fee" of $25.00 and a "Recording Fee" of $64.00.  Plaintiffs Philip Russo and Cynthia Russo paid these fees, unaware that such payments were not due to Defendants, and have been injured as a result of Defendants' deceptive, false and misleading acts and practices and breach of its mortgage contract.  It is believed that Defendants previously sold the Russo's mortgage to FNMA, FHLMC or GNMA.

18.     In a separate letter and statement dated April 19, 2004, Plaintiffs received a letter from Astoria Federal listing the "amount necessary to satisfy the above-mentioned loan" and

listing other fees and charges imposed by Defendants.  Included among those fees and charges was a "Satisfaction Fee" of $125.00 and a "County Clerk Fee" of $64.50.  Plaintiffs Philip and Cynthia Russo paid these fees, unaware that such payments were not due to Defendants, and have been injured as a result of Defendants' deceptive, false and misleading acts and practices and breach of its residential loan contract.

**Defendants**

19.     Astoria Financial is a Delaware corporation with its principle place of business and headquarters located at One Astoria Federal Plaza, Lake Success, New York.  It is a bank holding company registered under the Bank Holding Company Act, a unitary savings and loan association holding company under the Home Owners Loan Act and a federally chartered thrift. Astoria Financial's primary business is the operation of its wholly-owned subsidiary, Astoria Federal.

20.     Astoria Federal is a national bank headquartered in Wilmington, Delaware with its principle executive offices and place of business located at One Astoria Federal Plaza in Lake Success, New York.  Astoria Federal is a member of the Federal Home Loan Bank System. Astoria Federal's principal business is attracting retail deposits from the general public and investing those deposits in one-to-four family mortgage loans originated and sold by Astoria Federal and mortgage-backed securities.  Astoria Federal is a wholly-owned and controlled subsidiary of Astoria Financial.

21.     Astoria Federal Mortgage is a wholly-owned subsidiary of Astoria Federal and an indirect subsidiary of Astoria Financial.  Astoria Federal Mortgage is the operating subsidiary of Astoria Federal that engages of mortgage lending activities outside the State of New York.

7

22.     Long Island Bancorp, Inc. ("LIB") was a federally chartered mutual savings bank under the United States laws which maintained offices in Queens, and Nassau and Suffolk counties.  LIB also operated mortgage loan production offices across Long Island and in New Jersey, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina and Georgia.

23.     Defendant Long Island Savings was a wholly-owned savings bank subsidiary of LIB.  LIB had 35 branches, $6.58 billion in total assets, $3.58 billion in deposits and $581 million of stockholders' equity at September 30, 1998. Following the close of business of September 30, 1998, LIB merged into defendant Astoria Financial.  Astoria thereafter succeeded to the liabilities of LIB.

## FACTUAL ALLEGATIONS

24.     Long Island Savings was a thrift institution that was a major mortgage lender in Queens, Nassau and Suffolk counties in New York State.

25.     LIB also operated mortgage loan production offices in New Jersey, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina, Georgia and elsewhere.

26.     Astoria Financial is the second largest thrift institution headquartered in New York and the fifth largest in the United States.  As of November 19, 2003, it publicly reported assets of approximately $22.1 billion.  Astoria Financial's stock is traded on the New York Stock Exchange under the symbol "AF" and has a market capitalization of approximately $2.8 billion.

27.     Astoria Federal provides retail banking, mortgage, small business and consumer loan services to 700,000 customers through 86 banking offices and 121 Automatic Teller Machines ("ATMs") located throughout Nassau, Suffolk, Queens, Kings and Westchester Counties, and multiple delivery channels, including its website.

28.     With $11.2 billion in deposits, Astoria Federal commands the third largest deposit market share in the attractive Long Island market, which encompasses Kings, Queens, Nassau and Suffolk counties.   These 4 counties have a combined population exceeding 38 individual States.  Astoria Federal's market share of deposits in these New York counties is 8.3%.

29.     According to Astoria Financial's Form 10-K filed with the Securities and Exchange Commission (the "SEC") for the year ended December 31, 2002, in that year alone, Astoria Financial and its subsidiaries originated or purchased mortgage loans for 1 to 4 family homes totaling $4.53 billion.  The year before, in 2001, Astoria Financial and Astoria Federal originated or purchased mortgage loans for 1 to 4 family homes totaling $3.94 billion.

30.     As of the December 31, 2002, Astoria Financial and Astoria Federal owned loans valued at $12.06 billion, including $9.21 billion (or 76.9%) that were mortgage loans on 1 to 4 family homes.

31.     Net cash provided by Astoria Financial's operating activities (including the results of Astoria Federal and Astoria Federal Mortgage) totaled $157.4 million during the year ended December 31, 2002 and $222.2 million during the year ended December 31, 2001.  Astoria Financial reported net income for the year ended December 31, 2002 of $248.4 million and $222.9 million for the year ended December 31, 2001.

32.     Astoria Federal and/or Long Island Savings serviced loans owned by others valued at $2.67 billion as of the end of 2002, $3.32 billion as of the end of 2001 and $3.93 billion as of the end of 2000.  Many if not most of these loans are mortgage loans that were sold by Defendants to FNMA, GNMA or FHLMC.

33. Astoria Federal originates mortgage loans through its banking and loan production offices in New York, through commissioned brokers and representatives in 19 states (including New York, New Jersey, Connecticut, Pennsylvania, Massachusetts, Delaware, Maryland, Ohio, Virginia, North Carolina, South Carolina, Georgia, Illinois, California and Florida), and through correspondent relationships in a total of 44 states.

34. Astoria Federal maintains its only three Mortgage Servicing Centers in Lake Success, Babylon Village and Medford, New York.

35. In an effort to manage risk on its loan portfolio and to expand its ability to make more loans, Defendants generally resell the mortgage loans they originate and thereafter assume the role of "servicing" the mortgages, namely collecting the monthly mortgage payments and handling customer relations for which they receive fees from the owner of the loans and the mortgagors, and other fees and charges imposed on consumers.

36. In its Form 10-Q for the period ended June 30, 2002 filed with the SEC, Astoria Financial states that: "Since we generally sell our fifteen year and thirty year fixed rate loan production into the secondary mortgage market, the origination of such products for sale does not significantly reduce our liquidity."

37. Thus, Defendants admit in their SEC filings, as a rule, they sell mortgages into the "secondary mortgage market." The secondary mortgage market in the United States is led by the FHLMC (also known as "Freddie Mac"), the GNMA (also known as "Ginnie Mae") and FNMA (also known as "Fannie Mae").

38. According the website maintained by Freddie Mac: "America has a secondary mortgage market, led by Freddie Mac, which attracts capital from around the world to finance a

wide range of mortgage products designed specifically to make home ownership affordable and accessible."

39.     On the FNMA website, Fannie Mae states that it is "the nation's largest source of financing for home mortgages" but that it does "not lend money directly to home buyers. Instead, we work with lenders to make sure they don't run out of mortgage funds."

40.     GNMA claims that:  "Ginnie Mae has guaranteed more than $1.7 trillion in mortgage-backed securities. Historically, 95% of all FHA and VA mortgages have been securitized through Ginnie Mae."

41.     On or around February 4, 1993, Plaintiffs David and Carolyn McAnaney entered into a mortgage contract with Long Island Savings to borrow money to purchase a single-family residence in Suffolk County, New York.

42.     The mortgage contract was a standardized form mortgage contract prepared by Long Island Savings and modified only on the first and last pages as to terms of dollar amount of the Note and specifics about the borrower and the property.  The standard form contract was titled "Form 3033 10/91."

43.     These form mortgages, or similar form mortgages, are used by Long Island Savings and Astoria Financial and Astoria Federal.  They are titled "NEW YORK - Single Family – FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT."  On Page 6 of 6, Paragraph 22 of that contract, it states: "LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT: When lender has been paid all amounts due under the Note and this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied.  I will not be required to pay

11

lender for the discharge, but I will pay the cost of recording the discharge in the proper official records."

44.     In Paragraph 23 of that mortgage contract, check boxes are included to note the inclusion of any riders to the mortgage.  There are boxes to denote an adjustable rate rider and a box marked "other(s)."  Both were checked for Plaintiffs David and Carolyn McAnaney's mortgage.

45.      In the attachment to the mortgage contract titled "RIDER TO MORTGAGE" (the "Rider"), the paragraph numbering continues from the last numbered paragraph in the mortgage contact.

46.     Paragraph 32 of the Rider purports to change paragraphs 21 and 2(b) of the Security instrument by allowing the lender to collect for any and all "reasonable charges in connection with the servicing of this loan including, specifically, satisfaction of Mortgage."

47.     At the bottom of this rider is a bold-faced heading that reads: "**RIDER VOID IF SECURITY INSTRUMENT SOLD TO FNMA, GNMA OR FHLMC**."

48.     Similar riders appear in all mortgage contracts originated by Long Island Savings, Astoria Federal and Astoria Federal Mortgage.

49.     Following origination, Long Island Savings and/or LIB sold Plaintiffs David and Carolyn McAnaney's mortgage to FNMA.  Subsequent to that sale, Long Island Savings and then Astoria Federal acted as the servicer of that mortgage, collecting debts for the mortgage owned by FNMA.

50.     In 2002, Plaintiffs John Reilly and Constance Reilly entered into a mortgage contract with Astoria Federal to borrow money to refinance a single-family dwelling in Nassau

County, New York. Following that time, it is believed that Defendants sold the Reilly's mortgage to FNMA, GNMA or FHLMC. It is also believed that the Reilly's mortgage contained similar language concerning resale by Defendants of the mortgage to FNMA, GNMA or FHLMC, as is reflected in the McAnaney's mortgage. Astoria Federal remained the servicer of the Reilly's mortgage.

51.     In 1976, Plaintiffs Philip Russo and Cynthia Russo entered into a mortgage contract with Long Island Savings to borrow money to purchase a single-family dwelling in Suffolk County, New York. Following that time, it is believed that Defendants sold the Reilly's mortgage to FNMA, GNMA or FHLMC. It is also believed that the Russo's mortgage contained similar language concerning resale by Defendants of the mortgage to FNMA, GNMA or FHLMC, as is reflected in the McAnaney's mortgage. Long Island Savings and subsequently Astoria Federal was the servicer of the Russo's mortgage.

52.     Aside from their mortgage with Long Island Savings, Defendants also originated a loan with Plaintiffs Philip Russo and Cynthia Russo, secured by the Russo's home. Long Island Savings and/or Astoria Federal was the servicer of this loan.

53.     Defendants admit in their filings with the SEC and other public statements that they generally sell the mortgages they originate into the secondary market dominated by FNMA, GNMA and FHLMC. Thus, only in the rare instances when Defendants do not sell their mortgage loans to FNMA, GNMA or FHLMC are they permitted to charge the fees, charges and finance charges relating to the servicing, discharge, satisfaction and prepayment of mortgage loans.

54.     Nevertheless, contrary to applicable law and the terms of their mortgage contracts with Plaintiffs and the Class, Defendants knowingly and intentionally charge fees for mortgages and loans serviced by them, but which were sold to FNMA, GNMA or FHLMC.

55.     Included among those fees, charges and finance charges is an "Atty Doc Prep Fee" or "Satisfaction Fee" of $125.00 and a "Facsimile Fee" of $25.00 imposed by Defendants on Plaintiffs upon the satisfaction of their mortgage originated by Long Island Savings or Astoria Federal, and serviced by Astoria Federal.  Defendants invoiced and collected these fees, charges and false debts from Plaintiffs, after Defendants had sold Plaintiffs' mortgages and/or loans to FNMA, GNMA or FHLMC.

56.     Defendants imposed similar fees, charges and false debts on other Class members after mortgage loans Defendants' originated were sold to FNMA, GNMA or FHLMC.

57.     The "Atty Doc Prep Fee," "Satisfaction Fees" and "Facsimile Fee," or similarly described fees, each constitute undisclosed finance charges, prepayment penalties, refinancing penalties and payoff fees levied by Defendants onto consumers that pay-off mortgages or loans prior to their stated term or maturity.  These fees and charges would have been imposed on, or payable by, Plaintiffs and the Class had they paid-off their mortgages or loans at maturity rather than at an earlier date.

58.     Defendants have admitted knowledge that these fees are wrongly charged and collected, but continue to do so to this day.  In their Memorandum of Law in support of their motion to dismiss the original complaint in this action, Defendants admitted that "Plaintiffs [David McAnaney and Carolyn McAnaney] should not have been charged with the $125 'Atty Doc Prep Fee.'"

59.     The same admission was made by Astoria Federal Vice President William Conboy in a sworn Affidavit submitted with Defendants' motion to dismiss Plaintiffs' original complaint.

60.     Nevertheless, Defendants <u>continue</u> to impose and collect this fee from Class members, including Plaintiffs, who satisfied their mortgage <u>after</u> David and Carolyn McAnaney, <u>after</u> Plaintiffs David and Carolyn McAnaney filed their original complaint in this action, and <u>after</u> Defendants admitted to wrongfully charging the Plaintiffs and the Class the "Atty Doc Prep. Fee."

61.     Defendants also charge and collect a "Recording Fee" of approximately $64.00. New York law requires that a mortgage satisfaction be recorded within 45 days from the last payment of principle and interest owed on the mortgage.  In the case of Plaintiffs David and Carolyn McAnaney, their mortgage was satisfied on or about December 4, 2002.  However, satisfaction of the McAnaney's mortgage was not filed by Astoria Federal until March 31, 2003. Defendants charge and collect the Recording Fee from Class members, such as Plaintiffs David and Carolyn McAnaney, even though Defendants have not complied with the applicable laws for timely recording.

62.     Plaintiffs and the Class were financially injured as a direct and proximate result of Defendants' false, misleading and deceptive acts, practices and conduct described herein.

63.     To the extent that Plaintiffs and Class are not entitled to compensatory damages from Defendants, Plaintiffs and the Class have been and will continue to be irreparably injured and have no adequate remedy at law for Defendants' violations of law complained of herein.

## CLASS ACTION ALLEGATIONS

64. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated in the United States who had or currently have a mortgage or residential loan originated or purchased by any of the Defendants and who wrongfully paid closing fees, satisfaction fees, discharge fees, prepayment fees (or penalties), refinance fees (or penalties), attorney document preparation fees, facsimile fees, recording fees and any other fees, charges, false debts or finance charges in contravention of their mortgage or loan contracts or applicable laws (the "Class"). Excluded from the Class are Defendants, their parents, subsidiaries, officers, directors, employees, partners and co-venturers.

65. This action is brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, sub-sections 23(a) and 23(b)(2) and/or (b)(3). The Class satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

66. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members can be determined only by appropriate discovery, Plaintiffs believe that members of the Class number at least in the hundreds of thousands of persons, in New York and throughout the United States.

67. Because of the geographic dispersion of class members, there is judicial economy arising from the avoidance of a multiplicity of actions in trying this matter as a class action.

68. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests that are adverse or antagonistic to those of the Class. Plaintiffs' interests are to

obtain relief for themselves and the Class for the harm arising out of the violations of law set forth herein.

69.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex and consumer class action litigation.

70.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by each member of the Class may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiffs and members of the Class to individually seek redress for the wrongful conduct alleged.

71.     In addition, Defendants have acted and refused to act, as alleged herein, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or corresponding with respect to the Class as a whole.

72.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated TILA and/or HOEPA;

(b)     whether Defendants violated RESPA;

(c)     whether Defendants violated FDCA;

(d)     whether Defendants violated GBL §349 and/or the similar consumer practice statutes of other states;

(e)     whether Defendants violated New York Real Property Actions and Proceedings Law §1921 or similar laws of other states;

(f)     whether Defendants' acts and practices were false, misleading and/or deceptive;

(g)     whether Defendants breached their contractual obligations to Plaintiffs and the Class;

(h)     whether Defendants acted willfully, intentionally, knowingly and/or recklessly in failing to abide by the terms of their agreements with Plaintiffs and the Class;

(i)     the proper measure of damages to be paid to Plaintiffs and the Class;

(j)     whether Plaintiffs and the Class are entitled to injunctive or other equitable relief to remedy Defendants' past and continuing violations of law alleged herein; and

(k)     whether Defendants have been unjustly enriched by their inequitable and unlawful conduct, and if so, whether Defendants should be forced to disgorge inequitably obtained revenues or provide restitution.

73.     The Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation.

74.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FRAUDLENT CONCEALMENT AND EQUITABLE TOLLING

75.     Defendants have engaged in fraudulent, misleading and deceptive efforts to conceal the true nature of their unlawful conduct from Plaintiffs and the Class.  Defendants have intended to and have in fact accomplished their concealment through misrepresentations and omissions, as described herein.

76.     Included among that deception is Defendants' admitted practice of charging and collecting fees from Class members that Defendants know are not owed.   In certain circumstances, after successfully collecting these charges and fees, Defendants return some (but not all) of the money owed.  When doing so, however, they do not advise Plaintiffs or the Class that any monies were unlawfully or wrongfully charged and collected.  Aside from acting deceptively by their silence, they actively misled and mislead Plaintiffs and Class by stating that the retuned monies were due from escrow accounts maintained by Defendants.  In fact, such monies were included in a check mailed to Plaintiffs Carolyn and David McAnaney by Astoria Federal stated that it was "FOR PAYMENT OF ESCROW TO MORTGAGOR."

77.     After collecting the unlawful fees, Defendants often deposit some or all of these monies into escrow accounts maintained by Astoria Federal on behalf of Plaintiffs and the Class, even though such monies were not necessary to pay insurance, taxes or other necessary and allowable charges.

78.     Due to Defendants' fraudulent concealment and because Defendants represent that the unlawful fees are legitimately charged and collected, Plaintiffs have only recently learned of the existence of her claims against Defendants.  For the same reasons, many Class members are likely to be reasonably unaware of Defendants' unlawful acts.

19

79.     Plaintiffs' and the Class' lack of knowledge as to their claims against Defendants is and was not due to any fault or lack of diligence on their part, but rather due entirely or substantially to the acts of Defendants designed to conceal and hide the true nature of their unlawful and inequitable conduct.

## COUNT I

### (Violations of TILA and HOEPA)

80.     Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

81.     Plaintiffs and each Class member is a "person" as that term is defined in 15 U.S.C. §1602(d) and a "consumer" as that term is defined in 15 U.S.C. §1602(h).

82.     Defendants are each "creditors" as that term is defined in 15 U.S.C. §1602(f).

83.     The mortgage loans originated and sold by Defendants to Plaintiffs and the Class are consumer credit transactions, and also "residential mortgage transactions" as that term is defined in 15 U.S.C. §1602(w).

84.     The term "finance charge" is defined, in pertinent part, in 15 U.S.C. §1605(a) as "the sum of all charges, payable directly or indirectly by the persons to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."

85.     None of the fees wrongfully charged and collected by Defendants are *bona fide* or reasonable, such that they may be excluded from the accurate disclosure of the finance charge imposed by Defendants on Plaintiffs and the Class.  In addition, Defendants imposed these fees in amounts that are in excess of the reasonable value of services provided.

86.     15 U.S.C. §§ 1632 and 1638, and applicable regulations, require *inter alia* that creditors accurately, truthfully, completely, clearly and conspicuously disclose all finance charges, prepayment penalties and/or refinancing penalties to consumers in all consumer credit and residential mortgage transactions.

87.     As alleged herein, Defendants did not accurately, truthfully, completely, clearly and conspicuously disclose the amount of all finance charges, prepayment penalties and/or refinancing penalties in their consumer credit transactions and residential mortgage transactions with Plaintiffs and the Class, including disclosures made by Defendants in loans, notes and mortgages with Plaintiffs and the Class, in violation of 15 U.S.C. and §§1632 and 1638.

88.     Defendants wrongfully charged and collected fees in excess of $100 for each Plaintiff and Class member.

89.     15 U.S.C. §1639(c), and applicable regulations, prohibits the charging of a "prepayment penalty for prepaying all or part of the principle before the date on which the principle is due" for any mortgage referred to in 15 U.S.C. §1602(aa).

90.     As alleged herein, and to the extent any of the Plaintiffs or Class members did not engage in a "residential mortgage transaction," Defendants charged and collected prepayment penalties in violation of 15 U.S.C. §1639(c).

91.     Defendants' acts, practices and conduct constitute *per se* violations of TILA and/or HOEPA.  Even if not *per se* violations, Defendants' acts, practices and conduct violate TILA and/or HOEPA.

92.     Plaintiffs and the Class have been injured as a result of Defendants' violations of 15 U.S.C. §§1632, 1638 and/or 1639.

93.     Plaintiffs are entitled to pursue an action and a class action against Defendants pursuant to 15 U.S.C. §1640 to redress Defendants' violations of 15 U.S.C. §§ 1632, 1638 and/or 1639.

## COUNT II

### (Violations of RESPA.)

94.     Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

95.     Plaintiffs and each Class member is a "person" as that term is defined in 12 U.S.C. §2602(5).

96.     The mortgage loans originated and sold by Defendants to Plaintiffs and the Class are "federally related mortgage loans" as that term is defined in 12 U.S.C. §2602(1).

97.     Defendants provided "settlement services" to Plaintiffs and the Class, as that term is defined in 12 U.S.C. §2602(3) and applicable regulations.

98.     12 U.S.C. §2607(b) of RESPA states, in relative part, that:  "no person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

99.     12 U.S.C. §2610, and applicable regulations, prohibits a lender or servicer from imposing any fee or charge "for or on account of the preparation and submission by such lender or servicer of the statement or statements required (in connection with such loan) by sections 2603 and 2609(c) of this title or by the Truth in Lending Act (15 U.S.C. 1601 *et seq*.)."

100.    As alleged herein, Defendants imposed fees and charges on Plaintiffs and the Class for settlement services not provided, which Defendants' mortgage contracts stated would

not be charged in connection with the resale and satisfaction of federally related mortgage loans sold by Defendants to Plaintiffs and the Class, and which are prohibited by RESPA and other federal laws and regulations.  In addition, the fees and charges imposed by Defendants for "Atty Doc Prep Fees," "Satisfaction Fees" and "Facsimile Fees" were in excess of the reasonable value of services provided.

101.    Defendants also violated RESPA by collecting "unearned fees" related to settlement, satisfaction and/or discharge of the mortgage loans sold to Plaintiffs and the Class.

102.    In violation of 12 U.S.C. §2609(a), Defendants charge and collect unearned fees in connection with settlement of federally related mortgages, and then deposit such monies in escrow accounts maintained by Defendants on behalf of Plaintiffs and the Class that are unnecessary to pay taxes, insurance and other permitted amounts.

103.    Defendants' acts, practices and conduct constitute *per se* violations of RESPA. Even if not *per se* violations, Defendants' acts, practices and conduct violate RESPA.

104.    Plaintiffs and the Class have been injured as a result of Defendants' violations of 12 U.S.C. §§ 2607, 2609 and 2610.

105.    Plaintiffs are entitled to pursue an action and a class action against Defendants pursuant to 12 U.S.C. §§ 2607(d), 2609 and 2610 to redress Defendants' violations of RESPA.

## COUNT III

### (Violations of FDCPA)

106.    Plaintiffs repeat and reallege Paragraphs 1 through 79 as though set forth herein.

107.    Plaintiffs and each Class member is a "consumer" as that term is defined in 15 U.S.C. §1692a(3).

108.    All Defendants are "debt collectors" as that term is defined in 15 U.S.C. §1692a(6), insofar as they routinely collect the mortgage and loan debts and other fees (often not owed) from consumers ultimately owed to others.

109.    15 U.S.C. §1692e states as follows:  "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

110.    15 U.S.C. §1692f states as follows: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

111.    As alleged herein, Defendants have employed false, deceptive and misleading representations in order to induce consumers to pay fees, charges and debts not owed in connection with the satisfaction, discharge and repayment of their mortgage and loan debts. Defendants knew or recklessly disregarded the fact that Plaintiffs and the Class did not owe the monies sought and collected by Defendants.  Such conduct violates 15 U.S.C. §1692e.

112.    As alleged herein, Defendants have employed unfair and unconscionable means in order to induce consumers to pay fees, charges and debts not owed in connection with the satisfaction, recording and repayment of their mortgage and loan debts.  Defendants knew or recklessly disregarded the fact that Plaintiffs and the Class did not owe the monies sought and collected by Defendants.  Such conduct violates 15 U.S.C. §1692f.

24

113.    Plaintiffs and the class have been injured as a result of Defendants' violations of 15 U.S.C. §§ 1692e and 1692f.

114.    Plaintiffs are entitled to pursue a claim against Defendants pursuant to 15 U.S.C. §1692k to redress Defendants' violations of 15 U.S.C. §§ 1692e and 1692f.

## COUNT IV

### (Violations of New York GBL §349 and Similar Laws of Other State)

115.    Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

116.    Plaintiffs and the Class are "persons" within the meaning of GBL §349(h).

117.    GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

118.    As alleged herein, Defendants engaged in deceptive acts and practices in the form of misrepresentations and omissions during the conduct of business in and from New York in violation of GBL §349(a).

119.    Defendants knew or should have known that their acts, practices, statements, correspondence, invoices and representations, as discussed above, were false and likely to deceive and mislead Plaintiff and the Class members.

120.    Plaintiffs and the Class members have been injured as a result of Defendants' violations GBL §349(a).

121.    Defendants' deceptive and misleading acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the other members of the Class.

25

122.    Plaintiffs are entitled to pursue claims against Defendants pursuant to GBL §349(h) to redress Defendants' violations of GBL §349(a).

123.    Defendants' deceptive and unfair trade practices have also violated the consumer protection statutes in states other than New York, causing injury and permitting redress by those class members residing outside of New York.

## COUNT V

### (Breach of Contract)

124.    Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

125.    Plaintiffs and the other members of the Class accepted Defendants offer to borrow monies through mortgages upon the terms stated in the mortgage contracts drafted by Defendants.

126.    In these contracts, Defendants represented and agreed that Plaintiffs and the Class would not be charged certain fees if their mortgage loans were sold to FNMA, GNMA or FHLMC, but in fact did charge those fees, charges and false debts to Plaintiffs and the Class for mortgage loans sold by Defendants to FNMA, GNMA and FHLMC.

127.    By reason of Defendants' breaches, Plaintiffs and the Class suffered financial injuries.

## COUNT VI

### (Common Law Unjust Enrichment)

128.     Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

129.     As alleged herein, Defendants have unjustly benefited from their unlawful and inequitable acts resulting in the payment of money by Plaintiffs and the Class members.

130.     Defendants have and are continuing to derive profits and revenues resulting from their false, misleading, deceptive, unfair and inequitable conduct.

131.     It would be inequitable for Defendants to be permitted to retain any of the proceeds derived as a result of their unlawful conduct.

132.     Defendants should be compelled to provide restitution to the Class members and/or to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and the Class, all proceeds received by them from any unlawful or inequitable act described in this Complaint which has inured and continues to inure to the unjust enrichment of Defendants.

133.     Defendants should also be enjoined from continuing to engage in any unlawful or inequitable act alleged in this Complaint.

## COUNT VII

### (Common Law Fraud)

134.    Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

135.    As alleged herein, Defendants intentionally, willfully, knowingly and recklessly charged and collected fees for services that Defendants' contracts unambiguously stated would not be charged.

136.    Defendants drafted the mortgage contracts, possessed superior bargaining power and knowledge as to their mortgage transactions with Plaintiffs and the Class.  Defendants used such unequal benefits to take advantage and defraud consumers into paying fees and charged Defendants' know were not owed to Defendants.

137.    Plaintiffs and the other members of the Class paid these fees in reliance upon the various statements and representations of material fact made by Defendants.  Those statements, representations, and omissions were made for the purpose of inducing reliance thereon by Plaintiffs and the Class to pay fees not due to Defendants.  Defendants' knowing misrepresentations, misleading statements, and omissions of material fact by Defendants included, but were not limited to, those alleged in this Complaint.

138.    Plaintiffs and the other members of the Class had a right to rely on, and did reasonably rely on, Defendants' statements and misrepresentations.  Each of Defendants' misrepresentations, and omissions were material, in that Plaintiffs and the Class would not have paid the improper fees and charges if they had known that the statements and representations of Defendants were false, misleading, incomplete, unfair and untrue.

28

139.     Each of the above misrepresentations, misleading statements, and omissions made by Defendants were false, misleading, incomplete, and untrue, and were known or should have been known by Defendants to be false, misleading, incomplete, and untrue when made.   Each misrepresentation, misleading statement, and omission was made with the requisite intent to deceive and defraud, or to conceal the truth about Defendants' deceptive and fraudulent practices or with disregard for its truth or completeness, or in spite of the fact that it was untrue.  Each misrepresentation, misleading statement, and omission was made to induce Plaintiffs and the Class to pay fees and charges not due Defendants.

140.     Plaintiffs and the other members of the Class had no knowledge of the falsity, incompleteness, or untruth of the statements and representations of Defendants when they paid these fees and charges to Defendants.

141.     By reason of Defendants' misrepresentations, misleading statements, and omissions, Plaintiffs and the other members of the Class suffered financial injuries.

142.     The conduct of Defendants in perpetrating the fraud described above was malicious, willful, wanton, and oppressive, or in reckless disregard of the rights of Plaintiffs and the other members of the Class, thereby warranting the imposition of punitive damages against Defendants.

29

## COUNT VIII

**(Violations of New York Real Property Actions & Proceedings Law §1921)**

143.    Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

144.    New York Real Property Actions and Proceedings Law §1921 requires that after the full repayment of principle, interest and other amounts owed on a mortgage loan, "a mortgagee of real property situate[d] in this state, unless otherwise requested in writing by the mortgagor or the assignee of such mortgage, must execute and acknowledge before a proper officer, in like manner as to entitle a conveyance to be recorded, a satisfaction of mortgage, and thereupon within forty-five days arrange to have the satisfaction of mortgage: (a) presented for recording to the recording officer of the county where the mortgage is recorded, or (b) if so requested by the mortgagor or the mortgagor's designee, to the mortgagor or the mortgagor's designee."

145.    Defendants charge and collect a "Recording Fee" from members of the Class in the amount of approximately $64.00, even when they fail to timely record the satisfaction of mortgage as required by New York Real Property Actions and Proceedings Law §1921.

146.    Plaintiffs are entitled to pursue claims against Defendants pursuant to New York Real Property Actions and Proceedings Law §1921 to redress Defendants violations of this statute.

147.    Defendants' untimely recording of the satisfaction the Class' members mortgages may also have violated statutes in states other than New York, causing injury and permitting redress by those Class members residing outside of New York.

## COUNT IX

### (Violations of New York Real Property Actions & Proceedings Law §274-a)

148.    Plaintiffs repeat and reallege paragraphs 1 through 79 as though set forth herein.

149.    New York Real Property Actions & Proceedings Law §274-a requires that Defendants, as the owner or servicer of Plaintiffs' and the Class members' mortgages and/or home equity loans, to provide any mortgagor or their agent with mortgage-related documents concerning the amount necessary to pay off and satisfy the mortgage and/or home equity loan, upon request by any mortgagor or their agent.

150.    York Real Property Actions & Proceedings Law §274-a does not permit Defendants, as the owner or servicer of Plaintiffs' and Class members' mortgage and/or home equity loans, to charge any fee for providing mortgage-related documents concerning the amount necessary to pay off and satisfy a mortgage and/or home equity loan owned or serviced by Defendants.  In particular, Defendants may not impose, request or collect any fee from Plaintiffs or Class members to send a payoff letter or statement by facsimile.

151.    All Plaintiffs had mortgage and/or home equity loans originated and/or serviced by Defendants.

152.    All Plaintiffs requested that Defendants provide them with mortgage-related documents concerning the amount necessary to pay off and satisfy a mortgage and/or home equity loan owned or serviced by Defendants.

153.    Astoria Federal demand, imposed and collected fees and penalties from all Plaintiffs and Class members, in or about the amount of $25 or $50 for providing payoff letters or statements to Plaintiffs and other Class members.  These fees were collected by Astoria

Federal and were shared with and inured to the benefit of Astoria Federal's parent company, Astoria Financial.  Prior to their acquisition by Astoria Financial, and perhaps after, Long Island Saving and LIB engaged in similar violations of New York Real Property Actions & Proceedings Law §274-a.

154.   Defendants' imposition and collection of fees for providing payoff letters or statements to Plaintiffs and the Class violates New York Real Property Actions & Proceedings Law §274-a, and caused injury to Plaintiffs and Class members.

155.   Plaintiffs and the Class are entitled to pursue claims against Defendants pursuant to New York Real Property Actions and Proceedings Law §274-a to redress Defendants violations of this statute.

156.   Defendants' practices violating New York Real Property Actions and Proceedings Law §274-a have also violated the statutes in states other than New York, causing injury and permitting redress by those class members residing outside of New York.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

(1)   Certifying the Class pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, certifying Plaintiffs as representatives of the Class and designating their counsel as counsel for the Class;

(2)   Awarding Plaintiffs and the Class compensatory damages;

(3)   Awarding Plaintiffs and the Class statutory and exemplary damages where permitted;

32

(4)    Permanently enjoining Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

(5)    Declaring that Defendants have engaged in the unlawful and inequitable conduct alleged herein;

(6)    Ordering Defendants to make restitution and/or disgorge into a common fund or a constructive trust all monies paid by Plaintiffs and the Class to the full extent to which Defendants were unjustly enriched by their unlawful and inequitable conduct alleged herein;

(7)    Granting Plaintiffs and the Class the costs of prosecuting this action, together with interest and reasonable attorneys' and experts' fees; and

(8)    Granting such other relief as this Court may deem just and proper under the circumstances.

## **JURY DEMAND**

Plaintiffs and the Class demand a trial by jury on all issues so triable.

Dated: New York, New York
       November 8, 2005

                                  **WHALEN & TUSA, P.C.**

                                  _____/s/_____
                                  Joseph S. Tusa (JT 9390)
                                  Paul C. Whalen (PW 1300)
                                  90 Park Avenue
                                  New York, NY  10016
                                  Tel. (212) 786-7377
                                  Fax. (212) 658-9685

**G. OLIVER KOPPELL & ASSOCIATES**
G. Oliver Koppell (GK 4851)
99 Park Avenue, Suite 800
New York, NY  10016
Tel: (917) 368-0400
Fax. (212) 973-9494

Attorneys for Plaintiffs