UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 04-CV-1101 (JFB) (WDW)

---

DAVID MCANANEY, CAROLYN MCANANEY,
JOHN REILLY, CONSTANCE REILLY,
PHILIP RUSSO, AND CYNTHIA RUSSO,

Plaintiffs,

VERSUS

ASTORIA FINANCIAL CORP., ASTORIA FEDERAL SAVINGS
& LOAN ASSOC., ASTORIA FEDERAL MORTGAGE CORP.,
LONG ISLAND BANCORP, INC., AND LONG ISLAND
SAVINGS BANK, FSB,

Defendants.

---

MEMORANDUM AND ORDER
September 12, 2006

---

JOSEPH F. BIANCO, District Judge:

Plaintiffs bring this class action against various financial institutions alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, state consumer protection statutes, and common law fraud and unjust enrichment. Previously, the Court certified the following class of plaintiffs under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

> All consumers or borrowers in the United States who had or currently have a mortgage or residential loan originated or purchased by any of the defendants and who wrongfully paid or will be demanded to pay closing fees, satisfaction fees, discharge fees, prepayment fees (or penalties), refinance fees (or penalties), attorney document preparation fees, facsimile fees, recording fees and any other fees, charges, false debts or finance charges in contravention of their mortgage or loan contracts or applicable laws.

Currently before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; defendants' motion to amend their filings under Local Civil Rule 56.1, and their responses to plaintiffs' requests to admit; and plaintiffs' motion for costs and fees. For the reasons that follow, defendants' summary judgment motion is granted as to class plaintiffs' TILA claims that accrued on or before March 15, 2003. Moreover, because none of the named plaintiffs has a timely TILA claim, the remaining branches of the pending motions are dismissed without prejudice to the parties' refiling such motions following the substitution or intervention of new class representatives.

I. BACKGROUND AND PROCEDURAL HISTORY

A. Background

The underlying facts giving rise to this litigation are comprehensively described by Judge Spatt in a prior decision addressing defendants' motion to dismiss ("*McAnaney I*"), and by the undersigned in a prior decision granting plaintiffs' motion for class certification. *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 581-82 (E.D.N.Y. 2005) ("*McAnaney I*"); *McAnaney v. Astoria Fin. Corp.*, No. 04 Civ. 1101 (JFB); 2006 WL 2689621 (E.D.N.Y. Sept. 19, 2006) ("*McAnaney II*"). As such, the Court presumes the parties' familiarity with the facts of this case, and briefly recites only those facts adduced during discovery that are relevant to resolution of the instant motions.[1]

1. The McAnaneys

On February 4, 1993, David and Carolyn McAnaney ("the McAnaneys") obtained a residential loan relating to their residence located at 32 Beach Road, Belle Terre, new York, in the form of a mortgage from Long

---

[1] As a threshold matter, the Court grants defendants' motion to amend their Local Civil Rule 56.1 Statement and their response to plaintiffs' 56.1 statement. Plaintiffs argue that defendants' amended filings should be rejected by this Court because (1) Local Civil Rule 56.1 permits the filing of amended 56.1 statements *prior to* the completion of briefing and argument of a summary judgment motion, but not *following* the completion of briefing and argument; (2) certain assertions in defendants' amended filings are "unsupported by the factual record" (Pls.' Mem. Opp. Dfts.' Motion to Amend, at 16); and (3) defendants' amended filings are "prejudicial" to plaintiffs (*id.*). The Court rejects each of these arguments. First, "Rule 56.1 does not prohibit the consideration of untimely statements," at least where the admission of the statement will not prejudice an opposing party. *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 445 n.1 (S.D.N.Y. 1998). Second, with regard to the assertions in defendants' amended 56.1 filings that are purportedly unsupported by the record, the Court, as with any of the parties' filings made pursuant to Local Civil Rule 56.1, "in its analysis of the motion[s] for summary judgment, will only consider relevant evidence that is admissible pursuant to the . . . frame-work established in Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1." *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 569 (E.D.N.Y. 1999). Finally, the Court finds that its acceptance of defendants' amended 56.1 filings will not unfairly prejudice plaintiffs because they have had an opportunity to respond to the assertions therein – indeed, plaintiffs have submitted a twenty-three page brief opposing defendants' motion to amend in which plaintiffs specifically respond to the substance of defendants' amended filings. Accordingly, in addressing the parties' respective motions for summary judgment, the Court will consider defendants' amended Local Civil Rule 56.1 filings. *See generally Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

2

Island Savings Bank ("LISB") (hereinafter, "the McAnaneys' first loan"). (Pls.' 56.1 ¶ 1.)[2] The McAnaneys' first loan was serviced by defendant LISB until that entity was acquired by defendant Astoria Federal Savings and Loan Association ("Astoria Federal") and/or defendant Astoria Financial Corporation ("Astoria Financial"). (*Id.* ¶ 3; Dfts.' Am. Resp. 56.1 ¶ 3.) Thereafter, Astoria Federal serviced the Mcananeys' first loan until it was sold to the Federal National Mortgage Association ("Fannie Mae"). (Pls.' 56.1 ¶ 5.)

On November 18, 2002, Astoria Federal sent the McAnaneys a "payoff letter" via facsimile, which listed several fees to be paid by the McAnaneys which were "necessary to satisfy" the Mcananeys' first loan. (*Id.* ¶ 6.) The amount listed on the payoff letter included (1) an "Atty Doc Prep Fee" of $125, (2) a "Facsimile Fee" of $25, and (3) a "Recording Fee" of $64.50.[3] (*Id.* ¶¶ 7, 14, 16; Pls.' Resp. 56.1 ¶¶ 67-69.)

It is undisputed that the McAnaneys should not have been charged the Atty Doc Prep Fee by Astoria Federal with regard to the McAnaneys' first loan. (*Id.* ¶ 9; Dfts.' Am. Resp. 56.1 ¶ 9.) According to defendants, Astoria Federal improperly demanded the Atty Doc Prep Fee from the McAnaneys due to a "programming error" in an automated computer system used by Astoria Federal. (*Id.* ¶ 9; Pls.' Resp. 56.1 ¶¶ 28-29.)

In any event, plaintiffs assert that the McAnaneys paid the Atty Doc Prep Fee to Astoria Federal, and that Astoria Federal retained the fee. (Pls.' 56.1 ¶ 8; Dfts.' Am. Resp. 56.1 ¶ 8.) However, defendants assert that, upon discovery of its error, Astoria refunded the fee to an escrow account held by the McAnaneys. (*Id.* ¶ 12; Dfts.' 56.1 ¶ 61; Pls.' Resp. 56.1 ¶ 61.) In addition, it is undisputed that Astoria Federal did not inform the McAnaneys that it had improperly demanded or collected the Atty Doc Prep Fee, or that it had refunded such a fee to the McAnaneys' escrow account. (Pls.' 56.1 ¶ 13; Dfts.' Am. Resp. 56.1 ¶ 13; Pls.' Resp. 56.1 ¶ 76.) It is undisputed that the McAnaneys paid the Facsimile Fee and the Recording Fee to Astoria Federal. (Pls.' 56.1 ¶ 15.)

The McAnaneys obtained a second residential loan from LISB concerning a property located at 121 Jayne Avenue, Port Jefferson, New York (hereinafter, "the McAnaneys' second loan"). (Pls.' 56.1 ¶ 25.) On November 18, 2002, Astoria Federal sent the McAnaneys a "payoff letter" relating to the McAnaneys' second loan, which listed several fees to be paid by the McAnaneys which were "necessary to satisfy" the loan. (*Id.* ¶ 29.) The amount listed on the payoff letter included (1) an "Atty Doc Prep Fee" of $125, (2) a "Facsimile Fee" of $25, and (3) a "Recording Fee" of $64.50. (*Id.* ¶¶ 30, 36, 38.)

It is undisputed that the McAnaneys paid each of these fees to Astoria Federal. (*Id.* ¶¶ 31, 37, 39.) It is also undisputed that, with regard the Atty Doc Prep Fee relating to the McAnaneys' second loan, Astoria Federal did not represent to the McAnaneys that such a fee had been improperly demanded or collected from the McAnaneys, or that such a fee was refunded to them by Astoria Federal. (*Id.* ¶¶ 34; Dfts.' Am. Resp. 56.1 ¶ 34.)

---

[2] Where only one party's 56.1 statement is cited, the other party does not dispute the facts alleged, or there is no evidence controverting such fact, unless otherwise noted.

[3] Hereinafter, the Court will refer to these three types of fees collectively as "the disputed fees."

### 2. The Reillys

On or about March 28, 2002, John and Constance Reilly ("the Reillys") obtained a residential loan in the form of a mortgage from Astoria Federal (hereinafter, "the Reilly loan"). (Pls.' 56.1 ¶ 47.) The Reilly loan was serviced by Astoria Federal until the time it was repaid. (*Id.* ¶ 49.) On April 16, 2004, and April 19, 2004, respectively, Astoria Federal sent the Reillys two "payoff letters" which listed several fees to be paid by the Reillys that were "necessary to satisfy" the loan, including (1) an "Atty Doc Prep Fee" of $125, (2) "Facsimile Fees" of $25 and $50, and (3) a "Recording Fee" of $44.50. (*Id.* ¶¶ 51, 53, 59, 62; Dfts.' 56.1 ¶¶ 97-98.)

It is undisputed that the Reillys paid the Atty Doc Prep Fee and the Facsimile Fee to Astoria Federal, and that Astoria Federal deducted the Recording Fee from funds held in escrow by Astoria Federal for the Reillys. (Pls.' 56.1 ¶¶ 55-56, 61, 64; Dfts.' Am. Resp. 56.1 ¶¶ 55-56, 61, 64; Dfts.' 56.1 ¶¶ 46-47, 103; Pls.' Resp. 56.1 ¶¶ 46-47, 103.) Furthermore, it is undisputed that Astoria Federal did not represent to the Reillys that the Atty Doc Prep Fee had been improperly demanded or collected from the Reillys, or that such a fee was refunded to them by Astoria Federal. (Pls.' 56.1 ¶ 58; Dfts.' Am. Resp. 56.1 ¶ 58.)

### 3. The Russos

On or about November 12, 1993, Philip and Cynthia Russo ("the Russos") obtained a residential loan from LISB in the form of a mortgage ("the Russo loan"). (Pls.' 56.1 ¶ 72.) The Russo loan was serviced by LISB until the bank was acquired by Astoria Federal; thereafter, the loan was serviced by Astoria Federal until it was repaid. (*Id.* ¶¶ 74-75.) On June 2, 2004, Astoria Federal sent to the Russos a "payoff letter" which listed several fees to be paid by the Russos that were "necessary to satisfy" the Russo loan, including (1) an "Atty Doc Prep Fee" of $125, (2) a "Facsimile Fee" of $25, and (3) a "Recording Fee" of $64.50. (*Id.* ¶¶ 51, 53, 59, 62; Dfts.' 56.1 ¶¶ 83, 85; Pls.' Resp. 56.1 ¶¶ 83, 85.) It is undisputed that the McAnaneys paid the Facsimile Fee and the Recording Fee to Astoria Federal. (Pls.' 56.1 ¶ 15.)

It is undisputed that the Russos should not have been charged the Atty Doc Prep Fee by Astoria Federal. (*Id.* ¶ 80; Dfts.' Am. Resp. 56.1 ¶ 80.) According to defendants, Astoria Federal improperly demanded the Atty Doc Prep Fee from the Russos due to a "programming error" in an automated computer system used by Astoria Federal. (*Id.* 56.1 ¶ 81.) In any event, plaintiffs assert that the Russos paid the Atty Doc Prep Fee to Astoria Federal, and that Astoria Federal retained that fee. (Pls.' 56.1 ¶ 81; Dfts.' Am. Resp. 56.1 ¶ 81.) However, defendants assert that, upon discovery of its error, Astoria Federal refunded the fee to an escrow account held by the Russos. (*Id.* ¶ 81; Dfts.' 56.1 ¶ 61; Pls.' Resp. 56.1 ¶ 61.) Astoria Federal did not inform the McAnaneys that it had improperly demanded or collected the Atty Doc Prep Fee, or that it had refunded such a fee to the McAnaneys' escrow account. (Pls.' 56.1 ¶¶ 83-84; Dfts.' Am. Resp. 56.1 ¶¶ 83-84.)

On May 8, 2002, the Russos also obtained a residential loan from Astoria Federal in the form of a Home Equity Line of Credit ("the Russos' HELOC"). (Pls.' 56.1 ¶ 95.) The Russos' HELOC was serviced by Astoria Federal until it was repaid. (*Id.* ¶ 97.) In two "payoff letters" dated, respectively, June 2, 2004, and June 16, 2004, Astoria Federal listed the amounts "necessary to satisfy" the Russos' HELOC loan, including (1) a

"Satisfaction Fee/Atty Document Preparation Fee" of $125, and (2) a "County Clerk Fee/Recording Fee" of 64.50. (*Id.* ¶¶ 98-101, 107.) It is undisputed that the Russos paid both fees to Astoria Federal. (Pls.' 56.1 ¶¶ 106, 111; Dfts.' Am. Resp. 56.1 ¶¶ 106, 111.)

Plaintiffs assert that Astoria Federal improperly demanded and collected the fees from the Russos. (Pls.' 56.1 ¶ 103; Dfts.' Am. Resp. 56.1 ¶ 103; Dfts.' 56.1 ¶ 92; Pls.' Resp. 56.1 ¶ 92.) In any event, it is undisputed that Astoria Federal did not represent to the Russos that it had improperly demanded or collected the fees from the Russos. (Pls.' 56.1 ¶¶ 105-06; Dfts.' Am. Resp. 56.1 ¶¶ 105-06.)

4. Alleged Nondisclosures

As to each of the loans discussed *supra*, plaintiffs assert that defendants failed to disclose any of the disputed fees to plaintiffs in accord with the disclosure provisions of TILA prior to origination of the respective loans at issue. (Pls.' 56.1 ¶¶ 43-46, 68, 69, 71, 91-94, 113-14; Dfts.' Am. Resp. 56.1 ¶¶ 43-46, 68, 69, 71, 91-94, 113-14.)

B. PROCEDURAL HISTORY

Plaintiffs' commenced this class action on March 16, 2004. The case was originally assigned to the Honorable Arthur D. Spatt, District Judge. On July 16, 2004, plaintiffs filed an amended complaint. Thereafter, defendants moved to dismiss the amended complaint. The motion was granted in part, and denied in part, and the parties were directed to proceed with discovery. On November 8, 2005, plaintiffs, with leave of the Court, filed a second amended class action complaint, adding certain state law claims. On March 31, 2006, the case was reassigned to the undersigned.

Thereafter, plaintiffs moved to certify a class. The motion was granted on September 19, 2006. On October 20, 2006, plaintiffs moved for Court approval of the class notice and class notice plan.[4] On December 15, 2006, defendants moved for summary judgment. On December 21, 2006, plaintiffs cross-moved for partial summary judgment. Oral argument was heard on the parties' cross-motions on March 28, 2007. Thereafter, the parties submitted additional briefing regarding defendants' motion to amend their filings under Local Civil Rule 56.1 and their responses to plaintiffs' requests to admit, as well as plaintiffs' motion for costs and fees.

II. STANDARD OF REVIEW

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004);

---

[4] Plaintiffs later consented to hold the class notice and class notice plan motion in abeyance pending the resolution of the parties' cross-motions for summary judgment.

5

*see Anderson*, 477 U.S. at 248 (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

"This standard applies equally to cases . . . in which both parties [have] moved for summary judgment." *Bronx Household of Faith*, 492 F.3d at 96 (citing *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). As the Second Circuit has held:

> [W]hen parties have filed cross-motions for summary judgment, the court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Bronx Household of Faith*, 492 F.3d at 96-97 (citing *Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

### III. DISCUSSION

Defendants seek summary judgment as to all of plaintiffs' claims, save for plaintiffs' state law claims under N.Y. RPL § 1921. Defendants assert the following arguments in support of their motion: (1) plaintiffs' TILA claims are untimely; (2) the disputed fees are not "finance charges" pursuant to TILA and, thus, plaintiffs' TILA claims must fail; (3) federal law preempts plaintiffs' statutory state law claims; and (4) plaintiffs fail to raise a triable issue as to their statutory and common law state claims.

Plaintiffs seek summary judgment as to the following claims: (1) defendants' failure to disclose the Disputed Fees as "finance charges" in violation of TILA; (2) defendants' breach of plaintiffs' mortgage agreements on the ground that defendants improperly demanded and collected the Atty Doc Prep Fee in violation of the agreements; (3) defendants' breach of plaintiffs' loan agreements on the ground that defendants' improperly demanded and collected certain fees in violation of the agreements; (4) unjust enrichment arising from defendants' breach of the mortgage and loan agreements; and (5) violations of New York State statutes, namely N.Y. RPL § 274-a and N.Y. GBL § 349. In addition, plaintiffs seek attorneys' fees pursuant to the "equitable fund" doctrine; that is, plaintiffs assert that the instant action conferred certain benefits upon defendants for which plaintiffs and class counsel are entitled to recover the value thereof. For the reasons that follow, the Court finds that the named plaintiffs' TILA claims are untimely and declines, at this juncture, to address the remaining issues.

## A. Statute of Limitations

Plaintiffs assert claims under TILA.[5] Defendants argue that such claims must fail because plaintiffs filed the instant action beyond the applicable one-year limitations period, and, following discovery, have failed to establish that plaintiffs are entitled to equitable tolling of the limitations period. For the reasons that follow, the Court finds that plaintiffs' TILA claims are untimely.

### 1. Timeliness of the TILA Claims

TILA provides that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see, e.g., Council v. Better Homes Depot, Inc.*, No. 04 Civ. 5620 (NGG), 2006 WL 2376381, at *9 (E.D.N.Y. Aug. 16, 2006); *see also Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001). "It is well-settled law that in 'closed-end credit' transactions, like the [transactions] at issue, the 'date of the occurrence of violation' is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs." *Cardiello v. The Money Store, Inc.*, No. 00 Civ. 7332 (NRB), 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001) (collecting cases); *see, e.g., Boursiquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350, 353 (D. Conn. 2004); *see also Campbell v. Chandler Assoc.,* Inc., No. 05 Civ. 1770 (RSP), 1997 WL 151889, at *2 (N.D.N.Y. March 28, 1997); *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986).

Here, the record clearly demonstrates that, with regard to all of the transactions at issue involving the named plaintiffs, plaintiffs entered the loan agreements more than one year prior to the filing of the instant action on March 16, 2004.[6] Thus, pursuant to the "date of occurrence" rule described above, plaintiffs' TILA claims are untimely.

However, plaintiffs argue that, rather than applying the "date of occurrence" rule to their TILA claims, this Court should measure the limitations period from the date upon which plaintiffs *discovered* that the disputed fees were being charged to plaintiffs, and, as such, find that "[p]laintiffs did not reasonably discover their claims until shortly before their respective involvement in this lawsuit." (*See* Pls.' Opp. at 32-33.) The Court rejects this argument. It is well-settled that, in the context of TILA claims, the "discovery rule" that plaintiffs urge this Court to adopt is applied solely to claims arising from "open-end" credit transactions, rather than the "closed-end" transactions at issue here. *See Jacobs v. Citibank, N.A.*, No. 01 Civ. 8436 (JSR) (KNF), 2005 U.S. Dist. LEXIS 17495, at *12-13 (S.D.N.Y. Aug. 4, 2005) ("The phrase 'occurrence of the violation' means different things depending on whether the violation occurs in the context of a 'closed-end' credit plan or that of an 'open-end' credit plan."); *see, e.g., Douce v. Banco Popular N.A.*, No. 05 Civ. 8979 (LAK) (KNF), 2006 WL 2627966, at *7 (S.D.N.Y. Sept. 12, 2006) ("Although the term 'closed-end credit' is not defined in 15 U.S.C. § 1602, a one-time loan transaction, such as the [car loan] at issue in the instant action, is

---

[5] Plaintiffs separately allege claims under the "Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA")," which they assert is "includ[ed]" within TILA. Accordingly, the Court describes both plaintiffs' TILA *and* HOEPA claims as "TILA claims."

[6] Specifically, it is undisputed that the last date upon which one of the named plaintiffs entered into a loan transaction with defendants was on May 8, 2002, when the Russos obtained a residential loan from Astoria Federal. (Pls.' 56.1 ¶ 95.)

7

considered a 'closed-end credit' transaction. An occurrence of a violation, in the context of a 'closed-end credit transaction, is the point no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to [the plaintiff].") (citing *Cardiello*, 2001 WL 604007, at *3) (internal quotation marks and citation omitted).

A "closed-end credit" transaction is one where "the finance charge is divided into the term of the loan and incorporated into time payments," and includes a completed loan like a mortgage or a car loan. *See Baskin v. G. Fox & Co.*, 550 F. Supp. 64, 66-67 (D. Conn. 1982); *see also Cardiello*, 2001 WL 604007, at *3 n.8. By contrast, an "open-end" credit transaction "means a plan under which the creditor reasonably contemplates repeated transactions," and includes an open line of credit such as a credit card. 15 U.S.C. § 1602(I); *see Baskin*, 550 F. Supp. at 66-67. Here, the record clearly demonstrates that the residential loans at issue here were *not* "open end credit plan[s]" wherein "the creditor reasonably contemplates repeated transactions, . . . and . . . provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."[7] 15 U.S.C. § 1602(i) (defining the term "open end credit plan"). Rather, it is beyond doubt that the mortgage and HELOC loans at issue constitute "closed-end credit" transactions, in that they are "one-time loan[s]" wherein defendants fully performed their obligations under the respective loan agreements at the time the parties entered into such agreements. *See, e.g., Barkley v. Olympia Mortg. Co.*, No. 04 Civ. 0875 (RJD) (KAM), 2007 WL 2437810, at *17 (E.D.N.Y.

Aug. 22, 2007) ("In cases involving 'closed-end credit' transactions such as mortgages, the 'occurrence of the violation' typically refers to the date on which a plaintiff enters into a loan agreement."); *Coveal v. Consumer Home Mortg., Inc.*, No. 04 Civ. 4755 (ILG), 2005 WL 704835, at *3 (E.D.N.Y. March 29, 2005) (finding that, with regard to the mortgage loan transaction at issue, "[t]he 'occurrence of a violation' refers to the date on which [p]laintiffs entered into the loan agreement, or when defendants extend the credit for the loan, whichever date is later"); *Cardiello*, 2001 WL 604007, at *3 (finding that, with regard to the home equity loans at issue, "the 'date of the occurrence of violation' is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs") (collecting cases); *Van Pier v. Long Island Sav. Bank*, 20 F. Supp. 2d 535, 538-39 (S.D.N.Y. 1998) (finding that, with regard to the mortgage loan at issue, "[it] is clear that the alleged TILA nondisclosure violation here occurred at the time of the loan in 1984") (collecting cases); *Baskin*, 550 F. Supp. at 66-67 ("As a general rule the disclosures required by the Act are revealed to the consumer at the time the contract for the extension of credit is executed or, at the very latest, at the time of performance. Thus there is a specific time at which a violation occurs and a court can use that occurrence as the point from which the limitation period begins to run.").

Accordingly, because plaintiffs cite no controlling authority in support of departing from the date of occurrence rule and otherwise fail to make any persuasive arguments to that effect, the Court finds that plaintiffs' TILA claims run afoul of the one-year limitations period set forth in Section 1640(e).

---
[7] Indeed, although plaintiffs argue that this Court should apply the discovery rule, they concede that this is a "'closed end' transaction case." (*See* Pls.' Mem. Opp. at 32 & n.20.)

2. Equitable Tolling

Nevertheless, plaintiffs' TILA claims may still be asserted in this action if plaintiffs establish that the limitations period for such claims should be equitably tolled. The weight of authority among district courts in this circuit, in accord with the view of every court of appeals that has considered the issue, indicates that "the doctrine of equitable tolling applies [to] delay the commencement of the running of the statute of limitations under TILA § 1640." *Cardiello*, 2001 WL 604007, at *4; *see, e.g., Council*, 2006 WL 2376381, at *9; *Coveal*, 2005 WL 704835, at *4; *Boursiquot*, 323 F. Supp. 2d at 353; *Weil v. Long Island Sav. Bank, FSB*, 77 F. Supp. 2d 313, 323 (E.D.N.Y. 1999); *see also Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) ("Every other circuit that has considered the issue has held that TILA is subject to equitable tolling.") (collecting cases); *Ramadan v. The Chase Manhattan Corp.*, 156 F.3d 499, 504 (3d Cir. 1998); *Jones v. TransOhio Savings Ass'n.*, 747 F.2d 1037, 1041 (6th Cir. 1984); *King v. California*, 784 F.2d 910, 914-15 (9th Cir. 1986). This Court agrees with the above-cited case authority and concludes that equitable tolling must be considered when analyzing the limitations period for a TILA claim.

i. Applicable Law

"The federal doctrine of equitable tolling may supersede an expired statute of limitations where a plaintiff establishes that (1) the defendant concealed from her the existence of her cause of action during the statutory period, (2) she commenced the action within the statutory period from the time that she became aware of her claim, and (3) her continuing ignorance was not attributable to lack of diligence on her part." *Council*, 2006 WL 2376381, at *9 (citing *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)) (additional citations omitted). "Stated differently, equitable tolling is permitted 'where the complainant has been induced or tricked by [an] adversary's misconduct into allowing the filing deadline to pass.'" *Coveal*, 2005 WL 704835 (quoting *Irwin v. Dep't of Vet. Affairs*, 498 U.S. 89, 96 (1990)).

Here, plaintiffs argue that the TILA limitations period should be equitably tolled on the basis of defendants' fraudulent concealment of the purported TILA violations. (*See* Pls.' Mem. Opp. at 23-32.) According to plaintiffs, the defendants engaged in two types of "active and affirmative actions to hide their TILA violations" from plaintiffs. (*Id.*) First, plaintiffs assert that defendants affirmatively chose not to disclose the disputed fees to plaintiffs at the time the loans were made, even though defendants knew they were going to charge the disputed fees to plaintiffs upon plaintiffs' prepayment of the loans. Second, plaintiffs assert that defendants have falsely represented that, since the filing of the instant action, defendants have refunded the Atty Doc Prep Fees that they improperly collected from certain plaintiffs.[8] According to plaintiffs, by engaging in such conduct, defendants have fraudulently concealed the TILA violations from plaintiffs.[9]

---

[8] Specifically, according to plaintiffs, although defendants indicate that they have refunded the Atty Doc Prep Fees into escrow accounts held by certain plaintiffs, the financial statements relating to those escrow accounts indicate that defendants have not, in fact, refunded such fees. (*See* Pls.' Mem. Opp. at 28-29.)

[9] In support of their argument that defendants fraudulently concealed the TILA violations, plaintiffs also assert that defendants demanded and collected the Recording Fees from plaintiffs but, subsequently, when defendants learned that the releases relating to

9

The first type of alleged concealing conduct – the defendants' purported nondisclosure of the disputed fees at the inception of the loans at issue – is the exact conduct upon which plaintiffs' TILA claims are founded. The second type of alleged concealing conduct – the allegedly fraudulent representations regarding refunds of the Atty Doc Prep Fees – is separate and apart from the conduct underlying plaintiffs' TILA claims. The Court now turns to the question of whether the first type of allegedly concealing conduct may be considered as a basis for equitable tolling of the TILA limitations period.

There is a split among circuits as to whether, in order for fraudulent concealment to serve as a basis for equitable tolling, the defendant's concealing conduct must be "separate-and-apart" from the conduct underlying the plaintiff's claims. *Compare Greer v. Bank One*, No. 01 Civ. 7352 (WRA), 2002 WL 1732366, at *2 (N.D. Ill. July 25, 2002) ("Fraudulent concealment implies deliberate efforts by the defendant to prevent the plaintiff from suing within the applicable statute of limitation, which efforts are *above and beyond* the wrongdoing upon which the plaintiff's underlying claim is based. . . . The alleged acts of concealment must amount to active steps beyond a mere non-disclosure or failure to disclose the alleged initial fraudulent conduct.") (emphasis supplied) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990) ("Fraudulent concealment . . . denotes efforts by the defendant-above and beyond the wrongdoing upon which the plaintiff's claim is founded-to prevent the plaintiff from suing in time."); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 72 (7th Cir. 2001)); *and Ripplinger v. Amoco Oil Co.*, 916 F.2d 441, 442 (8th Cir. 1990) ("[F]raudulent concealment . . . requires an act of affirmative misrepresentation over and above the acts creating the alleged cause of action.") *with Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 126 (4th Cir. 1995) ("Adoption of the separate and apart standard would undercut the purpose of the fraudulent concealment doctrine merely to benefit those defendants who were cunning enough to commit their crimes initially in such a manner that there was no need for further concealment."); *and State of Texas v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1532 (5th Cir. 1988) ("[O]ur rejection of a requirement that 'acts of concealment' be independent of the conspiracy may make it easier to prove fraudulent concealment in antitrust cases."). However, even where courts reject the "separate-and-apart" rule, they require that, in order "to prove fraudulent concealment" as a basis for equitable tolling, the plaintiff must still "provide evidence of affirmative acts of concealment" by the defendant, *Supermarket of Marlinton*, 71 F.3d at 126, that are "directed at deflecting litigation." *Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211, 218-19 (4th Cir. 1987); *see, e.g., Allan Const. Co.*, 851 F.2d at 1531; *Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 564-65 & n. 9 (E.D. Va. 2003) (finding that,

---

plaintiffs' mortgages were not actually "recorded" with the appropriate authority, defendants failed to refund the Recording Fees to plaintiffs. (Pls.' Mem. Opp. at 31.) According to plaintiffs, defendants' failure to refund the Recording Fees or to ensure that the Recording Fees were put to their proper use, demonstrates that defendants "conceal[ed] unlawful conduct" from plaintiffs. (*Id.* at 32.) The Court rejects this argument. Defendants' alleged failure to fulfill the obligations that accompanied the collection of the Recording Fees – namely, to ensure that the mortgage releases were recorded and, if they were not recorded, to refund the Recording Fees to plaintiffs – is immaterial to the equitable tolling issue. Instead, as discussed herein, the sole material issue with regard to plaintiffs' equitable tolling argument is whether defendants fraudulently concealed any conduct that violated the *disclosure* provisions of TILA.

10

"to satisfy . . . the fraudulent concealment test, a plaintiff must provide evidence of 'affirmative acts of concealment' of the TILA violation by the defendants") (internal citation omitted).

In any event, although the Second Circuit has not decided the issue, the overwhelming weight of authority among district courts in this circuit and in courts elsewhere favors the view that, absent some affirmative deception by defendants, the mere nondisclosure of fees later charged to plaintiffs does not, by itself, justify equitable tolling of the TILA limitations period. *See, e.g., Cardiello*, 2001 WL 604007, at *5 ("In cases involving TILA, the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself* is necessary to equitably toll the running of the statute of limitations.") (emphasis supplied) (internal quotation marks and citations omitted) (collecting cases); *accord Boursiquot*, 323 F. Supp. 2d at 354. Thus, absent some affirmative concealing conduct by the defendant beyond the nondisclosure of information required by TILA, a plaintiff's "inability to discover a nondisclosure is not enough . . . to toll the statute."[10] *Id.* As Judge Glasser noted dismissing the plaintiffs' TILA claims as untimely:

> Tolling does not apply, however, simply because plaintiffs did not or could not have discovered the facts giving rise to their claims within the statute of limitations period. . . . "[F]raudulent concealment in the law of limitations . . . denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time."

*Coveal*, 2005 WL 704835, at *4 (quoting *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (Posner, J.)); *see, e.g., Cardiello*, 2001 WL 604007, at *5; *Pettola v. Nissan Motor Acceptance Corp.*, 44 F. Supp. 2d 442, 450 (D. Conn. 1999) ("In TILA cases, the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations."); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 580 (M.D. Fla. 2006) ("The majority of district courts that have addressed the issue [of fraudulent

---

[10] In *Boursiquot*, the plaintiffs alleged, *inter alia*, that the defendant mortgagee violated TILA by charging certain fees, including a $90 "fax/statement fee," upon plaintiffs' prepayment of a mortgage loan. 323 F. Supp. 2d at 352-53. The court granted the defendant's motion to dismiss on the ground that plaintiffs' TILA claims were untimely. *Id.* at 354. With regard to the plaintiffs' argument that the TILA limitations period should be equitably tolled, the court found that, absent some affirmative act of concealment by the defendants beyond the alleged nondisclosures, "the statute of limitations will not be tolled even though the [plaintiffs] could not have discovered the nondisclosure when they closed the loan." *Id.* at 354. The court in *Boursiquot* cited three cases in support of this proposition: *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984) ("Nondisclosure is not a continuing violation for purposes of the statute of limitations."); *Bartholomew v. Northampton Nat'l Bank*, 584 F.2d 1288, 1296 (3d Cir. 1978) ("[T]he required disclosures under TILA are to be made as of the time that credit is extended, [ ] and it is as of that time that the adequacy and accuracy of the disclosures are to be measured."); and *Chevalier v. Baird Savs. Assoc.*, 371 F. Supp. 1282, 1284 (E.D. Pa. 1974) ("Since Truth-in-Lending creates a 'duty to disclose,' the Plaintiffs argue, the failure to so disclose automatically tolls the statute of limitations. We cannot accept this argument, facially appealing though it may be. To apply the doctrine of fraudulent concealment in such a way would be to nullify the statute of limitations established in § 1640(e). Either that provision would be meaningless, or else plaintiffs would have us believe that a 'violation' occurs only when the requisite disclosures are eventually made, or discovered. This certainly would square with no common understanding of the word 'violation.' ").

concealment as a basis for equitable tolling of the TILA limitations period] have required fraudulent conduct beyond the non-disclosure.") (citing *Cardiello*, 2001 WL 604007, at *4) (additional internal citation omitted).[11]

ii. Application

This Court agrees with the district court's finding in *Cardiello* that, with regard to equitable tolling on the basis of fraudulent concealment, the above-cited cases requiring more than mere nondisclosure "make good sense. . . . [I]f the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." *Cardiello*, 2001 604007, at *5 (citing *Hughes*, 566 F.Supp. at 838 ("[O]therwise the one-year statute of limitations would be tolled in almost every TILA action in which a non-disclosure violation was found and the statutory limitations provision would be a nullity.")). In the instant case, it is beyond doubt that defendants' alleged nondisclosure of the disputed fees is the same conduct upon which plaintiffs' TILA claims are founded. Thus, the Court rejects plaintiffs' argument that defendants' alleged nondisclosures constitute fraudulent concealment sufficient to toll the TILA limitations period. Instead, assuming *arguendo* that defendants failed to disclose the disputed fees to plaintiffs at the inception of the loans at issue, the Court finds, in accord with the overwhelming weight of authority discussed *supra*, that the fact that such nondisclosures occurred, and plaintiffs' subsequent "inability" to discover the nondisclosures, provides an insufficient basis to toll the TILA limitations period. *See, e.g., Boursiquot*, 323 F. Supp. 2d at 354.

Furthermore, the Court finds that plaintiffs have failed to demonstrate that defendants engaged in any concealing conduct *aside from* their alleged failure to disclose the disputed fees at the inception of the loans.

First, to the extent plaintiffs argue that the request for the allegedly undisclosed fees by defendants in the "payoff letters" constituted fraudulent concealment, the Court rejects that argument. Even assuming *arguendo* that defendants' demand for and collection of the disputed fees violated TILA, it is clear that such conduct did not constitute a "deliberate concealment of material facts relating to [defendants'] wrongdoing." *Cardiello*, 2001 WL 604007, at *4. Defendants' express

---

[11] *See also Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1184 (D. Minn. 1999) ("The Courts[] which have applied the doctrine of fraudulent concealment to TILA claims that are directed at alleged nondisclosures, have uniformly held that fraudulent conduct, beyond the nondisclosure itself, is necessary to permit the one-year period to be equitably tolled.") (citing *Ripplinger*, 916 F.2d at 442 ("[F]raudulent concealment . . . requires an act of affirmative misrepresentation over and above the acts creating the alleged cause of action.")); *Jones v. Saxon Mortg., Inc.*, 980 F. Supp. 842, 846 (E.D. Va. 1997) (finding, in a TILA action, that "the alleged acts of concealment . . . must amount to more than a failure on behalf of the defendant to disclose the initial fraudulent conduct. Indeed, fraudulent concealment requires some act in addition to the commission of the initial fraudulent act because it 'implies conduct . . . affirmatively directed at deflecting litigation'") (quoting *Pocahontas Supreme Coal Co.*, 828 F.2d at 218-19); *Diehl v. ACRI Co.*, 910 F. Supp. 439, 444 (N.D. Ill. 1995) (finding, in a TILA action, that equitable tolling based on "[f]raudulent concealment requires [the plaintiff to show] more than mere nondisclosure [by defendant]."); *Kicken v. Valentine Prod. Credit Ass'n*, 628 F. Supp. 1008, 1011 (D. Neb. 1984) ("Since a cause of action under § 1640 is created by nondisclosure of certain rights, the doctrine of fraudulent concealment does not apply unless the defendants have done more than merely failing to disclose certain information."); *Hughes v. Cardinal Fed. Sav. & Loan Ass'n*, 556 F. Supp. 834, 838 (D.C. Ohio 1983) (finding that the TILA limitations period was not equitably tolled where the plaintiff failed to demonstrate "more than mere non-disclosure").

12

requests for and their collection of the disputed fees did not constitute affirmative steps intended to *conceal* wrongdoing; rather, it is clear that such conduct, in and of itself, forms the basis for the alleged TILA violations at issue in this action.

Furthermore, even assuming *arguendo* that defendants' attempts to collect the disputed fees through "payoff letters" constituted fraudulent concealment of the TILA violations, such conduct cannot, under the circumstances of this case, serve to toll the TILA limitations period. It is clear that the purported concealing conduct occurred *after* the time in which plaintiffs could have brought the action had already expired. That is, each "payoff letter" at issue in this action was sent to the respective plaintiffs more than one year *after* plaintiffs had entered into the loan transactions with defendants.[12] As such, at the time of the allegedly concealing acts by defendants – namely, the issuance of the payoff letters – "there was no [TILA] limitations period to toll." *Evans*, 39 F. Supp. 2d at 1185 (citing *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir.1996)); *see Cardiello*, 2001 WL 604007, at *4 ("The *sine qua non* of fraudulent concealment is that the defendant fraudulently concealed from the plaintiff his cause of action *during the time in which plaintiff could have brought that action*. Absent such allegations, equitable tolling does not apply.") (emphasis supplied).

Second, as noted *supra*, plaintiffs assert that defendants concealed certain TILA violations by falsely representing to this Court that they had refunded the Atty Doc Prep Fees to certain plaintiffs. Specifically, according to plaintiffs, defendants' submissions in the instant action seek "credit[]" for "allegedly returning . . . the improperly demanded and collected [Atty Doc Prep Fee] for three of plaintiffs' loans." (Pls.' Mem. Opp. at 28.) Plaintiffs assert that, by claiming to have refunded such fees, defendants are somehow concealing the purported TILA violations. However, the Court finds that defendants' representations regarding the purported refunds do not constitute fraudulent concealment because they occurred *after* the filing of the initial complaint in this action on March 16, 2004. As such, at the time defendants allegedly attempted to "conceal" the purported TILA violations relating to the nondisclosure and collection of the Atty Doc Prep Fees, plaintiffs had *already* learned of defendants' conduct underlying those alleged violations. In fact, in the initial complaint, plaintiffs specifically alleged violations of TILA on the ground that defendants had failed to disclose the Atty Doc Prep Fee that defendants allegedly attempted to conceal in their submissions to this Court. (Compl. ¶¶ 48-49, 71 ("Defendants knowingly charge . . . an 'Atty Doc Prep Fee' of $125.00 and a 'Facsimile Fee' of $25.00 imposed by Defendants on Plaintiffs upon the satisfaction of their mortgage . . . . Defendants did not accurately, correctly and truthfully disclose . . . the amount of finance charges . . . .").)

Third, to the extent plaintiffs argue that defendants actually refunded portions of the disputed fees to plaintiffs, and that such partial refunds were intended to conceal defendants' purported TILA violations, the Court rejects that argument. In the Second Amended Complaint, plaintiffs allege that defendants, after improperly collecting certain disputed fees from plaintiffs, "return[ed] [to

---

[12] Specifically, plaintiffs obtained the residential loans and the payoff letters at issue, respectively, on (1) February 4, 1993 (loan) and November 18, 2002 (payoff letter); (2) March 28, 2002 (loan), and April 16, 2004, and April 19, 2004 (payoff letters); (3) November 12, 1993 (loan), and June 2, 2004 (payoff letter); and (4) May 8, 2002 (loan), and June 2, 2004, and June 16, 2004 (payoff letters).

13

plaintiffs] some (but not all) of the money owed." (Sec. Am. Compl. ¶ 76.) The Court in *McAnaney I* relied on this allegation (as set forth in an identical manner in the First Amended Complaint) in finding that "the allegations in the complaint are sufficient to allege an equitable tolling of the statute." 357 F. Supp. 2d at 587. Indeed, on the basis of that allegation alone, defendants' allegedly fraudulent return of the disputed fees would arguably constitute fraudulent concealment – *i.e.,* an affirmative act intended to discourage litigation. That is, if defendants had represented to plaintiffs that certain improper fees were being refunded to plaintiffs, but, in fact, defendants had retained some portion thereof, such conduct would have likely served to deter plaintiffs from seeking judicial relief under TILA.

However, following the close of discovery, and contrary to the allegation cited above, plaintiffs now concede that defendants did *not* make fraudulent representations to plaintiffs regarding refunds of improperly collected finance charges. Specifically, plaintiffs indicate that:

> No plaintiff was aware of a refund [given by defendants to plaintiffs]. . . . Defendants have not and cannot point to a single document provided to Plaintiffs informing [plaintiffs] that: i) Defendants had improperly demanded and/or collected the [Atty Doc Prep Fee]; ii) that Plaintiffs were receiving a refund . . . ; or iii) money was being returned [by defendants].

(Pls.' Mem. Opp. at 28-29.)[13] Instead, plaintiffs now assert that, rather than making false representations regarding refunds to plaintiffs prior to the commencement of this action (as alleged in the complaint), defendants have made such representations solely in their filings in this Court following the commencement of this action. Accordingly, because plaintiffs now specifically argue that defendants did not falsely represent to *plaintiffs* that they were receiving refunds of improperly collected fees, the Court declines to toll the TILA limitations period on the basis of the allegation in the Second Amended Complaint regarding defendants' purportedly fraudulent refunds of the disputed fees.[14]

Fourth, even assuming *arguendo* that defendants' representations to the Court regarding the refunds actually served to conceal certain TILA violations, such conduct cannot, under the circumstances of this case, serve to toll the TILA limitations period because it occurred *after* the time in which plaintiffs could have brought the action had already expired. It is clear that the first time at which defendants could have made such a claim was March 16, 2004, the date on which this action was filed. However, it is undisputed, as noted *supra*, that the most recent "date of occurrence" alleged by plaintiffs took place on May 8, 2002, when the Russos obtained a residential loan from Astoria Federal. (Pls.' 56.1 ¶ 95.) Thus, it is beyond doubt that the most recent one-year TILA limitations period began to run on that date, which was *more than* one year prior to the date on which defendants engaged in the alleged concealing conduct. Accordingly, with regard to defendants' allegedly false

---

[13] *See also* Pls.' 56.1 ¶¶ 11 ("No Defendant advised [the McAnaneys] that Astoria Federal incorrectly or improperly requested the $125 Atty Doc Prep Fee . . . ."); 34-35; 56-58; 82-84; 105-06.

[14] Defendants assert that they refunded the Atty Doc Prep Fee to certain plaintiffs where such a fee was improperly collected, but defendants do not indicate that they represented to those receiving refunds that they were receiving a refund of an improperly collected fee. (*See* Dfts.' Am. 56.1 ¶¶ 61, 75, 88, 103, 105.)

14

representations in this action regarding refunds of certain disputed fees to plaintiffs, "they are wholly irrelevant to the issue of tolling." *Evans*, 39 F. Supp. 2d at 1185 (citing *Hubbard*, 91 F.3d 75, 79 (9th Cir.1996)); *see Cardiello*, 2001 WL 604007, at *4. Therefore, because plaintiffs have failed to establish that the TILA limitations period should be tolled on the basis of fraudulent concealment, the Court dismisses as untimely plaintiffs' TILA claims that accrued on or before March 15, 2003.[15]

Finally, plaintiffs argue that, even assuming *arguendo* that the TILA limitations period should not be equitably tolled, the one-year statute of limitations applies "only to damage claims" brought under TILA and *not* to plaintiffs' "injunctive and equitable TILA claims." (*See* Pls.' Mem. Opp. at 34; Pls.' Mem. at 17.) The Court rejects this argument. Plaintiffs have failed to present any persuasive authority in support of the proposition that the TILA limitations period set forth in Section 1640(e) should be applied in such a manner. Instead, plaintiffs cite to two cases where courts specifically noted, respectively, that the TILA statute of limitations applies to an "action for damages" and a "civil damages remedy." (Pls.' Mem. Opp. at 34 (citing *Jacobs*, 2005 U.S. Dist. LEXIS 17495, at *11 ("15 U.S.C. § 1640(e) instructs that any action for damages sought for a violation of TILA must be brought within one year from the date of the occurrence of the violation.") and *Van Pier*, 20 F. Supp. 2d at 538 ("TILA creates a civil damages remedy for the borrower . . . but imposes a one-year statute of limitations on the action.").) However, neither of the cases indicate that the type of claims for injunctive relief asserted by plaintiffs are necessarily *excluded* from the TILA statute of limitations.[16] Rather, the plain language of Section 1640(e) and the cases interpreting that statute indicate that, where a damages claim under TILA is time-barred, the Court is prohibited from even reaching the question of whether the defendant has violated TILA.[17] 15 U.S.C. § 1640(e) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation."); *see, e.g., McKay v. Sacks*, No. 05

---

[15] As noted *supra*, plaintiffs also allege violations of HOEPA, a statute which, as plaintiffs concede, is included within TILA. As such, the TILA one-year statute of limitations applies both to plaintiffs' TILA and HOEPA claims. *See* 15 U.S.C. § 1640(e); *Mercado v. Playa Realty Corp.*, No. 03 Civ. 3427 (JO), 2005 WL 1594306, at *11 (E.D.N.Y. July 7, 2005). In addition, it appears, on the basis of the complaint and plaintiffs' submissions to this Court, that the conduct underlying plaintiffs' HOEPA claims – namely, defendants' failure to disclose certain terms in the mortgage loans at issue – is the identical conduct upon which plaintiffs' TILA claims are founded. Furthermore, the Court notes that plaintiffs fail to offer any explanation as to why their HOEPA claims should be distinguished from their TILA claims for statute of limitations purposes where both types of claims (1) arise from identical conduct by defendants and (2) are subject to the one-year statue of limitations set forth in Section 1640(e). Accordingly, the Court finds that (1) plaintiffs' HOEPA claims are untimely under the one-year limitations period of Section 1640(e); and (2) plaintiffs' tolling arguments as to their HOEPA claims fail for the same reasons discussed *supra* with regard to plaintiffs' TILA claims. Therefore, because the respective dates of occurrence relating to plaintiffs' HOEPA claims took place more than one year prior to the commencement of this action and the limitations period should not be tolled, plaintiffs' HOEPA claims are also dismissed as untimely.

[16] Plaintiffs' "injunctive and equitable" claims seek solely to "enjoin Defendants' ongoing TILA violations." (Pls.' Mem. at 17.)

[17] The Court notes that, while the one-year limitations period in Section 1640(e) does not apply to claims for rescission of a credit transaction under 15 U.S.C. § 1635, plaintiffs do *not* seek relief under that provision. Indeed, "[r]escission is not an available remedy for residential mortgages." *Eubanks v. Liberty Mortg. Banking Ltd.*, 976 F. Supp. 171, 174 (E.D.N.Y. 1997) (citing 15 U.S.C. § 1635(e)(1) ("This section does not apply to . . . a residential mortgage transaction.)).

15

Civ. 2307 (SJF) (LB), 2005 WL 1206810, at *4-5 (E.D.N.Y. May 20, 2005) (declining to address plaintiff's time-barred TILA claims). As such, because plaintiffs' TILA claims that accrued on or before March 15, 2003, are untimely, the Court cannot proceed to evaluate as to those claims whether, as plaintiffs allege, there is an "ongoing violation of TILA" that should be enjoined by this Court.[18] (Pls.' Mem. at 17.)

In sum, defendants' motion for summary judgment as to plaintiffs' TILA claims that accrued on or before March 15, 2003, is granted on statute of limitations grounds. Therefore, the TILA claims of any class member who obtained a loan from defendants on or before March 15, 2003, more than one year prior to the filing of this action, are dismissed.[19]

### B. Adequacy of the Named Plaintiffs As Class Representatives

The Court also finds that, because the named plaintiffs are included in the category of class members who can no longer assert their TILA claims, the named plaintiffs are inadequate representatives of the instant class. Specifically, it is clear that, because their TILA claims are time-barred, the named plaintiffs do not "possess the same interest" in litigating such claims as any remaining class members who seek to assert timely TILA claims. *See, e.g., East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("As this Court has repeatedly held, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks and citations omitted) (collecting cases); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997) (same).

---

[18] The Second Amended Complaint also asserts two federal claims that were previously dismissed by this Court in *McAnaney I*. Specifically, in *McAnaney I*, Judge Spatt granted defendants motion to dismiss plaintiffs' claims under (1) the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 ("RESPA"), and (2) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e) ("FDCPA"). 357 F. Supp. 2d at 590-93. As to the RESPA claims, Judge Spatt found that "no private right of action" was available to plaintiffs under RESPA. *Id.* at 591. As to the FDCPA claims, Judge Spatt found that "[d]efendants cannot be liable under the FDCPA because they are excluded from the definition of 'debt collectors' [set forth in that statute]." *Id.* at 593. Plaintiffs failed to move for reconsideration of the conclusions reached by the Court in *McAnaney I*. Nevertheless, the RESPA and FDCPA claims asserted in the Second Amended Complaint are identical to those dismissed by the Court in *McAnaney I*, and plaintiffs fail to offer any explanation as to why they have included such claims in the most recent complaint notwithstanding the fact that Judge Spatt's rulings constitute the law of this case. Accordingly, because the Court's findings in *McAnaney I* constitute the law of this case and plaintiffs fail to offer any reason to revisit those findings, plaintiffs' RESPA and FDCPA claims are dismissed. *See, e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.") (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964)) (internal quotation marks omitted); *Wright v. Cayan*, 817 F.2d 999, 1002 & n.3 (2d Cir. 1987) (noting that, even after reassignment of a case from one judge to another, the law of the case doctrine "dictates a general practice of refusing to reopen what has been decided").

[19] The Court notes, once again, that Judge Spatt's holding in *McAnaney I* regarding plaintiffs' tolling argument does not bind this Court's resolution of the issue at the summary judgment stage. As Judge Spatt noted in *McAnaney I*, while "the allegations in the complaint are sufficient to allege an equitable tolling of the statute," the issue of "[w]hether the [d]efendants actually engaged in any fraudulent activity or concealment is better raised after discovery has been completed." *McAnaney I*, 357 f. Supp. 2d at 587. Therefore, because the Court found *supra* that plaintiffs have failed to present evidence establishing that defendants fraudulently concealed plaintiffs' claims, the Court, in accord with the principles set forth in *McAnaney I*, finds that the TILA limitations period should not be equitably tolled in this case.

The Second Circuit has noted that, following certification of a class, "whenever it later appears that the named plaintiffs . . . [are] otherwise inappropriate class representatives," "a district court *may*" but "need not" decertify a class "if it appears that the requirements of Rule 23 are not in fact met."[20] *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982) (emphasis supplied). Instead, the Second Circuit has directed, in accord with Supreme Court precedent, that, "'provided the initial certification was proper[,] . . . the claims of the class members would not need to be mooted or destroyed because subsequent events . . . had undermined the named plaintiffs' individual claims.'" *Id.* (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 406 n.12 (1977)) (addition internal citation omitted); *see also Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1342 n.11 (11th Cir. 2003) (noting that a class, once certified, "acquires a legal status separate from that of the named plaintiffs") (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)); *Cobell v. Norton*, 213 F.R.D. 43, 45 (D.D.C. 2003) ("In the present circumstance the appropriate procedure is to substitute a new named plaintiff, not to decertify the class.").

In the instant action, the fact that the named plaintiffs' TILA claims are no longer viable does not make the suit moot or necessarily undermine the claims of the remaining class members. Therefore, this Court abides by the procedure favored by the Second Circuit where the named plaintiff is no longer an adequate representative of the class, *see, e.g., Norman v. Conn. State Bd. of Parole*, 458 F.2d 497, 499 (2d Cir. 1972), and, rather than decertifying the instant class on the ground that the named plaintiffs are no longer adequate representatives of the class, affords plaintiffs' counsel a reasonable period of time for the "substitution or intervention of a new class representative."[21] *Birmingham Steel*, 353 F.3d at 1342; *see, e.g., In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006); *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M 21-95 (WPP), 2005 WL 3304605, at *3 (S.D.N.Y. Dec. 7, 2005) ("Indeed, a class has a legal status separate from the named plaintiff, thus, should the class representative become inadequate, substitution of an adequate representative is appropriate to protect the

---

[20] The Court notes that, with regard to class certification orders under Rule 23, "courts are *required* to reassess their class rulings as the case develops." *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir.1999) (internal quotation marks omitted) (emphasis supplied); *Hnot v. Willis Group Holdings Ltd.*, 241 F.R.D. 204, 207-08 (S.D.N.Y. 2007); *see also Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C. Cir. 1981) ("'[A] district court's order denying or granting class status is inherently tentative,' and in fact this is one of the principal reasons why such orders are not, in themselves, appealable.") (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 11 (1978)) (alteration in original); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("[Under Rule 23,] [t]he district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.")*; Adames v. Mitsubishi Bank, Ltd.*, 751 F. Supp. 1548, 1564 (E.D.N.Y. 1990) ("A court's decision to certify a class . . . is not irreversible and may be altered or amended at a later date.") (citing 7B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1785, at 129 (2d ed. 1986)).

[21] As one court has noted:

> [I]f after the class has been certified and its claims heard and the representatives are found to be inadequate for some reason during the course of the class claims or during a bifurcated hearing with respect to individual claims, the appropriate step is appointment of new representatives from the existing class, not decertification.

*Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 617-18 (5th Cir. 1983); *see Leist v. Tamco Enterp., Inc.*, No. 80 Civ. 4439 (CLB) (JJT), 1984 WL 2425, at *4 (S.D.N.Y. April 3, 1984) (quoting *Carpenter*, 706 F.2d at 618).

interests of the class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 484 (S.D.N.Y. 2002) (noting that representative issues "may be resolved by appointment of replacement class representatives"). As such, the Court will afford plaintiffs' an opportunity to submit a motion for the substitution or intervention of new named plaintiffs in this action. Plaintiffs shall submit such a motion by Monday, October, 15, 2007. Defendants shall submit their response by November 15, 2007. Plaintiffs shall submit their reply, if any, by November 27, 2007.

C. The Remaining Branches of the Instant Motions

The Court declines to address the remaining issues in this action until the defect relating to the class representatives discussed *supra* can be addressed by plaintiffs. Accordingly, the remaining branches of the parties' cross-motions are dismissed without prejudice to the parties refiling such motions following resolution of the class representatives issue.

IV. CONCLUSION

For the reasons set forth above, summary judgment is GRANTED on statute of limitations grounds as to plaintiffs' TILA claims that accrued on or before March 15, 2003. Thus, the TILA claims of any class member who obtained a loan from defendants on or before March 15, 2003, more than one year prior to the filing of this action, are DISMISSED. Defendants' motion to amend their Local Civil Rule 56.1 Statement and response to defendants' Rule 56.1 Statement is GRANTED. The remaining branches of the parties' respective cross-motions, including plaintiffs' motion for partial summary judgment, plaintiffs' motion for costs and fees, and defendants' motion to amend their responses to plaintiffs' requests to admit, are DISMISSED without prejudice to the parties' refiling such motions following resolution of the class representatives issue. The parties shall present written submissions regarding the class representatives issue in accord with the briefing schedule set forth *supra*.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 12, 2007
Central Islip, NY

\* \* \*

Plaintiffs are represented by Joseph S. Tusa, Esq., and Paul C. Whalen, Esq, Whalen & Tusa, 90 Park Avenue, New York, New York 10016, and G. Oliver Koppell, Esq., G. Oliver Koppell & Associates, 99 Park Avenue, New York, New York 10016. Defendants are represented by Alfred W.J. Marks, Esq., Rosemary Q. Barry, Esq., and Lisa Pepe Whittaker, Esq., Day, Berry & Howard LLP, 875 Third Avenue, New York, New York 10022.