UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 04-CV-1101 (JFB) (WDW)
_____

DAVID MCANANEY, CAROLYN MCANANEY,
JOHN REILLY, CONSTANCE REILLY,
PHILIP RUSSO, AND CYNTHIA RUSSO,

Plaintiffs,

VERSUS

ASTORIA FINANCIAL CORP., ASTORIA FEDERAL SAVINGS
& LOAN ASSOC., ASTORIA FEDERAL MORTGAGE CORP.,
LONG ISLAND BANCORP, INC., AND LONG ISLAND
SAVINGS BANK, FSB,

Defendants.

_____

MEMORANDUM AND ORDER
January 25, 2008
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs brought this class action against various financial institutions alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, state consumer protection statutes, and common law fraud and unjust enrichment.[1] By

---

[1] The Court has certified the following class of plaintiffs under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

All consumers or borrowers in the United States who had or currently have a mortgage or residential loan originated or purchased by any of the defendants and who wrongfully paid or will be demanded to pay closing fees, satisfaction fees, discharge fees, prepayment fees (or penalties), refinance fees (or penalties), attorney document preparation fees, facsimile fees, recording fees and any other fees,

Memorandum and Order dated September 12, 2007, the Court granted defendants' motion for summary judgment on statute of limitations grounds as to plaintiffs' TILA claims that accrued on or before March 15, 2003 and, therefore, dismissed the TILA claims of any class member whose claim had accrued on or before March 15, 2003. *See McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101 (JFB), 2007 U.S. Dist. LEXIS 67552, at *54 (E.D.N.Y. Sept. 12, 2007) (the "September 12 Order"). Moreover, because the Court found that the named plaintiffs were included in this category of class members whose claims were time-barred, the Court also found that the named plaintiffs were no longer adequate representatives of the class. Thus, according to the procedure favored by the Second Circuit, the Court afforded plaintiffs an opportunity to submit a motion for the substitution or intervention of new named plaintiffs.

Plaintiffs now move for partial reconsideration of the September 12 Order, pursuant to Rules 54(b), 59(e), and 60(b) of the Federal Rules of Civil Procedure, as well as Local Rule 6.3, on the grounds that the Court's decision was contrary to controlling law. Specifically, plaintiffs argue that the Court mischaracterized a Home Equity Line of Credit ("HELOC") held by named plaintiffs Philip and Cynthia Russo (the "Russos") as a "closed-end" line of credit under TILA instead of an "open-end" line.[2]

> charges, false debts or finance charges in contravention of their mortgage or loan contracts or applicable laws.

[2] Plaintiffs do not move for reconsideration of the Court's dismissal of the other named plaintiffs'

As a consequence, plaintiffs argue, the Court should apply an alternate legal standard to determine the date the Russos' claim accrued. Plaintiffs argue that under this alternate standard, which measures the limitations period from the date the TILA violation is discovered, the Russos' claim survives. In opposition, defendants argue that plaintiffs are improperly raising an argument that they did not raise previously and that, in fact, contradicts plaintiffs' prior claim that all of their loans were closed-end. Defendants further argue that even if the HELOC were open-end, plaintiffs propose the wrong standard for determining the limitations period for open-end lines of credit. Under the appropriate standard, defendants argue, the Russos' claim is time-barred. Finally, defendants argue that this claim is time-barred even under the standard plaintiffs propose.

For the reasons set forth below, based upon the complaint and the statement in the plaintiffs' opposition papers to the summary judgment motion that this is a "closed-end transaction" (*see* Pls.' Mem. Opp. at 32 & n.20), the defendants and the Court concluded that plaintiffs were not alleging any "open-end transactions" in connection with this lawsuit. Based upon that ostensible position, the Court failed to consider whether the HELOCs were open-end lines of credit. However, plaintiffs now state in their motion for reconsideration that they did not intend to make any such con. Despite the ambiguity in their original position, the Court grants the partial motion for reconsideration to consider whether the HELOCs were open-end lines of credit and, if so, how that impacts the statute of limitations analysis as to those loans. However, after carefully reconsidering that issue below, the Court adheres to its prior ruling that the

claims.

2

Russos' claim remains time-barred. Specifically, although a HELOC is an open-end line of credit, plaintiffs propose the incorrect standard for calculating the one-year limitations period for open-credit transactions, and the proper standard bars the Russos' claim. In any event, this claim fails under plaintiffs' proposed standard as well because the Russos were on notice that they were being assessed finance charges, not specifically designated as such, at the time they entered the HELOC on May 8, 2002 and, thus, such claims were time-barred when plaintiffs filed this action in March 2004.

I. BACKGROUND

A. Facts

The underlying facts giving rise to this litigation are comprehensively described by the Honorable Arthur D. Spatt, District Judge, in a prior decision addressing defendants' motion to dismiss, and by the undersigned both in the September 12 Order and in the decision granting plaintiffs' motion for class certification. *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 581-82 (E.D.N.Y. 2005); *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101, 2006 U.S. Dist. LEXIS 66941 (E.D.N.Y. Sept. 19, 2006). Thus, the Court presumes the parties' familiarity with the facts of this case and briefly recites only those facts adduced during discovery that are relevant to resolution of the instant motion.

On May 8, 2002, the Russos obtained a residential loan from defendant Astoria Federal Savings and Loan Association ("Astoria Federal") in the form of a Home Equity Line of Credit (the "Russo HELOC"). (Pls.' 56.1 ¶ 95.) The Russo HELOC was serviced by Astoria Federal until it was repaid. (*Id.* ¶ 97.) In two "payoff letters" dated, respectively, June 2, 2004, and June 16, 2004, Astoria Federal listed the amounts "necessary to satisfy" the Russo HELOC loan, including (1) a "Satisfaction Fee/Atty Document Preparation Fee" of $125, and (2) a "County Clerk Fee/Recording Fee" of $64.50. (*Id.* ¶¶ 98-101, 107.) It is undisputed that the Russos paid both fees to Astoria Federal. (Pls.' 56.1 ¶¶ 106, 111; Dfts.' Am. Resp. 56.1 ¶¶ 106, 111.)

Plaintiffs assert that Astoria Federal improperly demanded and collected the fees from the Russos. (Pls.' 56.1 ¶ 103; Dfts.' Am. Resp. 56.1 ¶ 103; Dfts.' 56.1 ¶ 92; Pls.' Resp. 56.1 ¶ 92.) In any event, it is undisputed that Astoria Federal did not represent to the Russos that it had improperly demanded or collected the fees from the Russos. (Pls.' 56.1 ¶¶ 105-06; Dfts.' Am. Resp. 56.1 ¶¶ 105-06.)

With respect to all of the loans at issue in this case, including the Russo HELOC, plaintiffs assert that defendants failed to disclose any of the disputed fees to plaintiffs in accord with the disclosure provisions of TILA prior to origination of the respective loans at issue. (Pls.' 56.1 ¶¶ 43-46, 68, 69, 71, 91-94, 113-14; Dfts.' Am. Resp. 56.1 ¶¶ 43-46, 68, 69, 71, 91-94, 113-14.)

B. Procedural History

Plaintiffs commenced this class action on March 16, 2004, and submitted an amended complaint on November 8, 2005 (the "complaint"). On March 31, 2006, the case was reassigned from Judge Spatt to the undersigned. The Court certified a class on September 19, 2006 and granted defendants' motion for summary judgment on September 12, 2007.

Plaintiffs submitted the instant motion on September 17, 2007. Defendants responded on October 1, 2007. Plaintiffs submitted their

reply on October 3, 2007. Further, by letter dated October 4, 2007, defendants wrote to the Court regarding certain alleged "misstatements" in plaintiffs' reply memorandum.

II. STANDARD OF REVIEW

Motions for reconsideration may be filed under Federal Rules of Civil Procedure 59(e), 54(b), or 60(b), and pursuant to Local Rule 6.3. The decision to grant or deny a motion for reconsideration falls squarely within the discretion of the district court. *See Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 132 (2d Cir. 1999).

The standard for granting a motion for reconsideration pursuant to Rule 59(e) is "strict, and reconsideration will generally be denied." *Herschaft v. N.Y. City Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal citation omitted). Such a motion is appropriate when the moving party can demonstrate that the court overlooked "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Id.* at 284 (quotation omitted). Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Id.*

Rule 60(b) of the Federal Rules of Civil Procedure permits the Court to relieve a party from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances. *House v. Sec'y of Health and Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982). The Second Circuit has instructed that relief under Rule 60(b) is "extraordinary" and can be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *accord United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994).

Rule 54(b) states that a court may reconsider its order prior to entering judgment, *see* Fed. R. Civ. P. 54(b), but the Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). Specifically, "those decisions may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Official Comm.*, 322 F.3d at 167 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)) (internal quotation marks omitted).

Local Civil Rule 6.3 provides that a party moving for reconsideration must "set[] forth concisely the matters or controlling decisions which [the party] believes the court has overlooked." *See* Local Rule 6.3. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (internal citations omitted). Moreover, "reconsideration of a previous order is an

extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation and quotation marks omitted); *see also Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, No. 97 Civ. 6612 (SJ), 2006 U.S. Dist. LEXIS 7635, at *4 (E.D.N.Y. Feb. 15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.").

### III. DISCUSSION

#### A. Open- and Closed-End Loans Under TILA

TILA provides that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Jacobs v. Citibank, N.A.*, No. 01 Civ. 8436 (JSR) (KNF), 2005 U.S. Dist. LEXIS 17495, at *11 (S.D.N.Y. Aug. 4, 2005). However, "[t]he phrase 'occurrence of the violation' means different things depending on whether the violation occurs in the context of a 'closed-end' credit plan or that of an 'open-end' credit plan." *Douce v. Banco Popular N. Am.*, No. 05 Civ. 8979 (LAK)(KNF), 2006 U.S. Dist. LEXIS 85168, at *20 (S.D.N.Y. Aug. 25, 2006); *Jacobs*, 2005 U.S. Dist. LEXIS 17495 at *11-*12 (same). A "closed-end credit" transaction is one where "the finance charge is divided into the term of the loan and incorporated into time payments," and includes a completed loan such as a mortgage or car loan. *See Baskin v. G. Fox & Co.*, 550 F. Supp. 64, 66-67 (D. Conn. 1982). By contrast, an "open-end" credit transaction is one in which "the creditor reasonably contemplates repeated transactions, . . . and . . . provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(i). A credit card, for example, represents an open-end line of credit.

#### B. The Need for Partial Reconsideration and Additional Analysis

In the September 12 Order, based upon the complaint and summary judgment opposition papers, the Court treated all of the loans at issue – including the Russo HELOC – as closed-end, and analyzed the limitations period for these loans according to the framework applicable to closed-end credit transactions. *See* September 12 Order at 7-8 ("'It is well-settled law that in "closed-end credit" transactions, like the [transactions] at issue, the "date of the occurrence of violation" is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs.'") (quoting *Cardiello v. The Money Store, Inc.*, No. 00 Civ. 7332, 2001 WL 7332, at *3 (S.D.N.Y. June 1, 2001)). However, plaintiffs have clarified in their motion for reconsideration that their position is that the lawsuit also involves open-end lines of credit in the form of HELOCs.[3] Because plaintiffs

---

[3] The Court agrees with defendants that throughout the course of this litigation, and indeed until plaintiffs submitted their papers for the instant motion, they have – both implicitly and explicitly – characterized the Russo HELOC as a closed-end loan. In the complaint, for instance, plaintiffs do not bring causes of action pursuant to 15 U.S.C. §§ 1637 or 1637a, which pertain respectively to "[o]pen end consumer credit plans" and the "[d]isclosure requirements for open end consumer credit plans secured by the consumer's principal dwelling." (*See* Compl. ¶¶ 80-93.) Instead, plaintiffs bring their "TILA and HOEPA [the Home Ownership and Equal Protection Act]" claims pursuant to §§ 1632, 1638, and 1639. (*See*

5

*id.* ¶ 92.) Of these statutes, Section 1638 pertains solely to "[t]ransactions other than under an open end credit plan," 15 U.S.C. § 1638, and Section 1639 solely pertains to HOEPA. 15 U.S.C. § 1639. Although Section 1632 sets forth general disclosure requirements under TILA, including certain requirements for open-ended loans, *see* 15 U.S.C. § 1632(c), in light of plaintiffs' failure to cite the sections of TILA that pertain exclusively to open-end loans, defendants and the Court reasonably assumed that plaintiffs were not contending that open-ended loans were at issue here. Moreover, plaintiffs did not address defendants' assertion in their motion for summary judgment that all the residential mortgages at issue in this case were "'closed-end credit' transactions." (*See* Defs.' Motion at 11.) Indeed, not only did plaintiffs fail to counter that argument, but they also stated in their opposition to defendants' motion that this is a "'closed-end' transaction case." (*See* Pls.' Mem. Opp. at 32 & n.20.) In fact, none of plaintiffs' memoranda of law submitted prior to the instant motion characterized any of the loans at issue as "open-end," nor did plaintiffs invoke any of the statutes pertaining solely to open-end loans.

In response to defendants' pointing out that plaintiffs have not characterized the Russo HELOC as open-end in prior submissions to the Court, plaintiffs do not address their prior assertion that this was a "'closed end' transaction case." Instead, they point to several instances in the record that may have put defendants on notice that the Russo HELOC was open-end. For instance, plaintiffs state that the Russo HELOC Note agreement, to which plaintiffs referred in papers opposing defendants' motion for summary judgment, "demonstrates" that the HELOC was open-ended. (Pls.' Reply at 4.) However, plaintiffs' references to an exhibit indirectly "demonstrating" that the HELOC was open-end – in the context of plaintiffs' legal analysis in the very same brief stating that this is a "'closed-end' transaction case" – did not clearly put defendants or the Court on notice of plaintiffs' (apparent) position at the time that the HELOC was open-

have now clarified their position and because the Court failed to analyze this specific issue, the Court grants plaintiffs' motion for partial reconsideration and, as set forth below, will analyze the HELOC issue under applicable law.

After reviewing the applicable law, the Court concludes that a HELOC – such as that of the Russos – is an open-ended line of credit. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 64 n.10 (2004) (referring to "an open-end, real-property-secured loan (*e.g.,* a home equity line of credit)"); *see also United States v. Jacono*, No. 06-2155, 2007 U.S. App. LEXIS 18730, at *9 (3d Cir. Aug. 6, 2007) (characterizing home equity line of credit as an "open-ended mortgage[]"); *Rendler v. Corus Bank, N.A.*, 272 F.3d 992, 994 (7th Cir. 2001) ("The home equity line of credit was a seven-year open-end loan. . . ."); *Consumers Union of the U.S., Inc. v. Fed. Reserve Bd.*, 938 F.2d 266, 268 (D.C. Cir. 1991) ("[A]n open-end home equity loan is simply the consumer equivalent of a secured commercial line of credit."); *Jacobs*, 2005 U.S. Dist. LEXIS 17495, at *12-*13 ("[T]he Board explained that a home equity line of credit is an open-end credit line that is secured by a borrower's equity in his or her home."); *Stein v. JP Morgan Chase Bank*, 279 F. Supp. 2d 286, 291 n.3 (S.D.N.Y. 2003) ("TILA applies to open-ended home equity lines of credit like plaintiff's."); *Cortez v. Keystone*

---

end.

The Court thus recognizes that plaintiffs are essentially characterizing the Russo HELOC as open-ended for the first time on the instant motion. Nevertheless, as noted above, the Court grants the motion for partial reconsideration to examine this issue, as urged by plaintiffs, on the merits in light of their clarification of their position.

*Bank, Inc.*, No. 98-2457, 2000 U.S. Dist. LEXIS 5705, at *34 (E.D. Pa. May 2, 2000) ("TILA applies to open-end home equity lines of credit.").[4]

Further, as stated *supra*, whether a loan is closed- or open-ended determines the timing of the "occurrence of the violation" under TILA and, thus, the accrual date for TILA claims. *See Douce*, 2006 U.S. Dist. LEXIS 85168 at *20; *Jacobs*, 2005 U.S. Dist. LEXIS 17495 at *11-*12 (same). With respect to the Russos' claim, therefore, the Court will turn to the question of the proper limitations period for the open-ended Russo HELOC.

### C. The TILA Statute of Limitations Continues to Bar the Russos' Claim

#### (1) The Limitations Period for the Russos' Claim Began When the First Finance Charge Was Assessed

Plaintiffs argue that the limitations period for open-ended lines of credit begins to run when a consumer has notice of the TILA violation. In other words, plaintiffs ask the Court to apply a so-called "discovery rule" and find that the Russos' claim began to run when they discovered Astoria Federal's alleged TILA violation.[5] However, for the reasons set forth below, the Court declines to do so and agrees with defendants that the limitations period for open-ended lines of credit, such as the Russo HELOC, begins on the date the first finance charge is assessed. Moreover, the Court concludes that, under this standard, the Russos' claim remains time-barred.

Although the Second Circuit has not decided this issue, every circuit court that has calculated the TILA limitations period for open-ended lines of credit – as well as every district court within the Second Circuit that has also considered this issue – calculates this period from the date the first finance charge is imposed. *See, e.g., Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1042 (6th Cir. 1984) (noting that "determination of the TILA violation [for open-end credit arrangements] is only possible when the first finance charge appears"); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 n.3 (6th Cir. 1980) (same); *Bartholomew v. Northampton Nat'l Bank of Easton*, 584 F.2d 1288, 1296 (3d Cir. 1978) (noting that in open-end credit cases, the "limitations period does not begin to run with respect to an incomplete, inaccurate, or misleading disclosure . . . until a finance charge has been imposed on the debtor"); *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10, 21 (7th Cir. 1976) (holding in open-end credit case that "the limitations period should not be measured from the date the disclosure was required by law to be made, but instead by the date on which a finance charge was first imposed."); *Jacobs*, 2005 U.S. Dist. LEXIS 17495, at *15 ("In an open-end credit plan environment, a claim accrues for a TILA violation when the borrower is

---

[4] Because the Court thus finds that the Russo HELOC was an open-end loan as a matter of law, the Court need not address plaintiffs' argument that the HELOC also bore the factual characteristics of an open-end loan, *i.e.,* that it entitled the Russos to make multiple withdrawals. (*See* Motion at 4-5.)

[5] As stated *supra*, the Court originally measured the limitations period for the Russo HELOC as if it were a closed-end loan, *i.e.,* from the date the Russos entered into the HELOC agreeement or, at the latest, when Astoria Federal performed by

transmitting funds to the Russos. (September 12 Order at 7.)

first assessed a finance charge.");[6] *Schmidt v. Citibank (South Dakota) N.A.*, 677 F. Supp. 687, 690 (D. Conn. 1987) (holding with respect to open-ended loan that "the [limitations] period has been held to run from the point at which the consumer is first assessed a finance charge"); *Baskin*, 550 F. Supp. at 67 (starting limitations period for open-ended TILA violation at first finance charge); *see also Gengo v. Target Nat'l Bank*, 513 F. Supp. 2d 842, 848-49 (S.D. Tex. 2007) (holding that limitations period for open-end credit account began to run at the latest when "the first finance charges were assessed against Plaintiff's account"); *Raney v. First Nat'l Bank of Nebraska, Inc.*, No. 06-8-DLB, 2006 U.S. Dist. LEXIS 64445, at *14-*15 (E.D. Ky. Sept. 8, 2006) (measuring limitations period for open-end credit arrangement from date of first finance charge); *Davis v. Edgemere Fin. Co.*, 523 F. Supp. 1121, 1123 (D. Md. 1981) (noting that in open-end credit arrangement, limitations period begins to run when first finance charge is imposed). The Court finds these cases to be persuasive authority on that issue and, therefore, similarly holds that the limitations period for open-ended lines of credit begins to run on the date the first finance charge is imposed.[7]

Applying this broadly-accepted standard here, the Russos' claim remains time-barred. The "first payment date" on the Russo HELOC was June 10, 2002, and, thus, the first finance charge was assessed on or before that date. (*See* Pls.' Exh. A.) Therefore, the Russos would have had to file the instant action by June 2003 in order to comply with TILA's one-year statute of limitations – nine months before plaintiffs commenced this action. For this reason, the Russos' claim remains time-barred under the standard this Court has adopted for open-ended lines of credit under TILA.

Plaintiffs advance several arguments to show that this claim is not time-barred.

---

[6] The Court notes that plaintiffs cited *Jacobs* for this very proposition in their opposition to defendants' motion for summary judgment. (Pls.' Opp. at 32.) In fact, plaintiffs noted that "the 'open end' credit transaction discussed in *Jacobs* is similar to the facts of this 'closed end' transaction case due to Defendants' failure to disclose the TILA finance charges and penalties before Plaintiffs' and Class members' loan [sic] were made." (Pls.' Opp. at 32-33 n.20 (emphasis in original).)

[7] Indeed, the Court is aware of only four cases that have calculated the limitations period for an open-ended loan from a starting point other than the assessment of the first finance charge, and all of these cases are non-binding district court holdings from other circuits. The first such case, *Gates v. Ohio Savings Bank Association*, calculates the limitations period for an open-ended loan by citing a case pertaining to a closed-end loan, and thus finds that the claim accrued when the parties performed under the contract. *See* No. 1:06 CV 678, 2007 U.S. Dist. LEXIS 69509, at *9 (N.D. Ohio Sept. 19, 2007). The other three cases, which apply the discovery rule plaintiffs urge the Court to adopt, and which are all from the same district, do not even address the more broadly-accepted proposition – discussed *supra* and adopted by the Court here – that the limitations period for TILA violations involving open-ended loans begins when the first finance charge is assessed. *See McIntyre v. Household Bank*, No. 02 C 1537, 2004 U.S. Dist. LEXIS 25629, at *39-*40 (N.D. Ill. Dec. 21, 2004); *Estate of Henderson v. Meritage Mortgage Corp.*, 293 F. Supp. 2d 830, 834 (N.D. Ill. 2003); *Kent v. Celpzzo-Ettleson Chevrolet, Inc.*, No. 99 C 2868, 1999 U.S. Dist. LEXIS 17282, at *17-*18 (N.D. Ill. Nov. 3, 1999). In any case, as discussed *infra*, the Russos' claim would be time-barred even if the Court adopted the discovery rule these four cases espouse.

8

Specifically, plaintiffs urge the Court to find that the limitations period for the Russos' claim began when they discovered Astoria Federal's alleged TILA violation. For the reasons set forth below, the Court finds all of plaintiffs' arguments unpersuasive.

First, plaintiffs claim that the Court adopted a discovery rule for open-ended loans in the September 12 Order (*see* Pls.' Motion at 1), by noting that "in the context of TILA claims, the 'discovery rule' that plaintiffs urge this Court to adopt is applied solely to claims arising from 'open-end' credit transactions, rather than the 'closed-end' transactions at issue here" (September 12 Order at 7.) Contrary to plaintiffs' assertion, this statement of the Court does not reflect "the law of this case" with respect to the limitations period for open-ended transactions. (*See* Pls.' Reply at 2.) Instead, this statement is merely consistent with the Court's awareness, discussed *supra* at note 7, that a small minority of courts – most of which are in a single district – have employed a discovery rule in the context of such transactions. As the Court also discussed *supra*, however, the majority of courts that have considered this issue – including all circuit courts and all district courts within the Second Circuit that have considered it – measure the limitations period from the date the first finance charge was assessed.

Second, plaintiffs attempt to harmonize their proposed discovery rule with the cases – set forth *supra* – holding that the limitations period should begin when the first finance charge is assessed. In particular, plaintiffs point to the emphasis in those cases on notice of the TILA violation. (*Id.* at 2-3.)[8] *See, e.g.,*

*Jacobs*, 2005 U.S. Dist. LEXIS 17495, at *12 ("Under an open-end credit plan, a borrower typically becomes aware of a TILA violation 'only when the first finance charge is imposed' by the lender.") (quoting *Baskin*, 550 F. Supp. at 67); *Baskin*, 550 F. Supp. at 67 ("It appears evident that the purpose of [TILA] – to ensure the 'informed use of credit' – is best served if the starting point for the limitation period is deemed to be the date when there has been a finance charge which puts the consumer on notice that a violation has occurred."); *Schmidt*, 677 F. Supp. at 690 ("This reasoning has been based on the fact that a consumer may use his credit card for some time before he is first assessed a finance charge on his debt balance and should, therefore, not be held to have knowledge of terms he never saw."). However, none of these cases conditions its holding on the plaintiff's having notice of a violation. In *Jacobs*, for instance – the most recent case plaintiffs cite in this context – the court simply noted that a borrower "typically" obtains such notice by the time a finance charge is assessed. *Jacobs*, 2005 U.S. Dist. LEXIS 17495, at *12.

---

[8] As a threshold matter, pursuant to 12 C.F.R. § 226.5, which sets forth the general disclosure requirements for open-end credit in the form of "home equity plans," creditors must make their initial disclosure under TILA "before the first transaction is made under the plan." *See* 12 C.F.R. § 226.5(a)(4)(b). Further, plaintiffs specifically asserted in support of their motion for summary judgment that Astoria Federal's alleged TILA nondisclosures with respect to the Russo HELOC occurred "prior to [its] origination." (Pls.' 56.1 ¶¶ 113-14.) Thus, even under plaintiffs' view of the facts, the Russos' TILA disclosure violations occurred earlier than the date Astoria Federal first exacted a finance charge. Although the date of the non-disclosure, in itself, is not dispositive for purposes of measuring the limitations period, it does provide context for the Court's analysis.

9

Moreover, as the Court explained in detail in the September 12 Order, in the context of considering plaintiffs' claim of equitable tolling, "although the Second Circuit has not decided the issue, the overwhelming weight of authority among district courts in this circuit and in courts elsewhere favors the view that, absent some affirmative deception by defendants, the mere nondisclosure of fees later charged to plaintiffs does not, by itself, justify equitable tolling of the TILA limitations period." (*See* September 12 Order at 11-12.)[9] Specifically, courts deny equitable tolling under such circumstances because "if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." *Cardiello*, 2001 U.S. Dist. LEXIS 7107, at *16 (citing *Hughes v. Cardinal Fed. Sav. & Loan Ass'n*, 566 F. Supp. 834, 838 (S.D. Oh. 1983)). That courts – including those within this circuit – have discounted the importance of notice for the purpose of assessing TILA claims for equitable tolling further militates against the Court's adopting the discovery rule plaintiffs propose in the context of open-ended loans.

(2) The Russos' Claim is Time-Barred Even Under the Discovery Rule Plaintiffs Propose

As set forth below, Russos' claim would be time-barred even if the Court applied the discovery rule plaintiffs propose.

Plaintiffs claim that the Russos "first learned of the Disputed Fees in connection with prepayment of their HELOC in June 2004." (Pls.' Reply at 2.) As stated *supra*, these disputed fees consisted of the Attorney Doc Prep Fee and the recording fee. However, contrary to plaintiffs' claim, and as set forth below, the rider to the Russos' HELOC agreement – entitled "Home Equity Account Rider - Line of Credit" (the "HELOC Rider") – clearly provides for these fees and, thus, provided notice of these fees to plaintiffs when they executed the HELOC on May 8, 2002. Therefore, the uncontroverted evidence demonstrates that plaintiffs were on notice that they were being assessed finance charges, not specifically designated as such, at the time they entered into the HELOC on May 8, 2002.

Specifically, the Rider provides, in the section entitled "Mortgage Discharge," that "Lender will execute a mortgage satisfaction when it has been paid in full. I will pay Lender's counsel a reasonable preparation fee. I will promptly and properly record the discharge, and pay all recording costs." (*See* Rider ¶ 36, attached as Exh. 32 to Tusa Decl.) Particularly in light of this provision's location immediately before the Russos' signatures, the Court finds that the Rider explicitly put the Russos on notice that they would be assessed the disputed fees. Thus, even applying plaintiffs' proposed discovery rule, the Russos' claim was time-barred as of May 2003 – ten months prior to plaintiffs' filing this action.[10]

The Court rejects plaintiffs' argument that the Russos' claim did not accrue under the discovery rule until they were actually

---

[9] The Court found in the September 12 Order, as a matter of law, that defendants did not engage in affirmatively deceptive conduct aside from their alleged disclosure violations, and plaintiffs do not contest this ruling on the instant motion. (*See* September 12 Order at 12.)

[10] The Court notes, therefore, that the limitations period for the Russos' claim elapsed even earlier under plaintiffs' proposed standard than that which the Court adopts in this Order.

assessed the disputed fees. As a threshold matter, plaintiffs have cited no cases that support this application of the discovery rule. Moreover, as set forth below, even the cases plaintiffs cite generally in support of adopting a discovery rule for open-ended loans – discussed *supra* at note 7 – do not provide such support.

For instance, the facts of *McIntyre* are readily distinguishable from those at issue here. In that case, the court employed the discovery rule to analyze the statute of limitations for an open-ended loan in the form of a credit card. The plaintiff in *McIntyre* based his TILA claim on the credit card company's failure to disclose in its initial documents that it would assess an annual fee even if plaintiff did not use the card. 2004 U.S. Dist. LEXIS 25629, at *40. Specifically, while the credit card company disclosed the existence of the annual fee, it did not state that the fee would be charged in the absence of the card's use. *Id.* at *3-*4. Consequently, plaintiff claimed that he "could not have known from reviewing the initial disclosure statement that a finance charge would be added to his card before he used it. . . . Under his theory, [plaintiff's] TILA claim regarding the allegedly improper disclosure would have accrued, not when he reviewed the initial disclosure statement, but on the date that he discovered that the finance charge had been applied to his account." *Id.* at *40. Here, on the contrary, because plaintiffs do not – and cannot, plausibly – argue that the Rider failed to inform them of the disputed fees, plaintiffs cannot claim that they did not have notice of these fees at the time the Rider was executed. The court's application of the discovery rule in *McIntyre* is, therefore, inapposite.

*Estate of Henderson* is similarly irrelevant to plaintiffs' proposed application of the discovery rule. In that case, the plaintiff brought suit on behalf of his deceased mother's estate, alleging that the fees set forth in his mother's HELOC were "illegal and unconscionable." 293 F. Supp. 2d at 832-33. The court held that the estate's TILA claim did not accrue until the administrator learned about the existence of his mother's HELOC, after her death. *Id.* at 835. Consequently, the court rejected the argument that the claim should not have accrued until the administrator later received the loan documents. *Id.* Thus, the court in *Estate of Henderson* applied the discovery rule even more restrictively than the Court does in the instant action. Here, the Court finds that the Russos' claim would have accrued when they executed a document that explicitly disclosed the disputed fees. In *Estate of Henderson*, the court found that the limitations period began to run before the administrator even reviewed the relevant documents. Therefore, *Estate of Henderson* does not support plaintiffs' proposed application of the discovery rule.

The facts in *Kent* are similarly distinguishable. In that case, plaintiff based her TILA claim on defendant's statement in plaintiff's car retail installment contract that the "full amount" of a fee would go to the co-defendant, when in fact a portion of that fee went to defendant. 1999 U.S. Dist. LEXIS 17282, at *2. The court found that plaintiff's claim did not accrue until she discovered that a portion of the fee was going to an entity different from that represented in the contract. *Id.* at *19. Here, on the contrary, plaintiffs do not contend – and, again, cannot plausibly do so – that the Rider contained affirmative misrepresentations about the disputed fees. In fact, the Rider clearly discloses these fees in immediate proximity to the Russos' signatures. Thus, *Kent* does not support plaintiffs' application of the discovery rule.

In sum, for the reasons set forth above, the Court finds that the Russos' claim remains time-barred under the proper application of the discovery rule plaintiffs propose.

## IV. Conclusion

For the reasons set forth above, the Court grants plaintiffs' motion for partial reconsideration pertaining to the claim of named plaintiffs Philip Russo and Cynthia Russo. Upon such reconsideration, the Court finds that HELOCs are open-end lines of credit under the law, but the Russos' claim – along with those of the other named plaintiffs, as set forth in the September 12 Order – remains time-barred. Thus, as stated in the September 12 Order, the Court affords plaintiffs an opportunity to submit a motion for the substitution or intervention of new named plaintiffs in this action. Plaintiffs shall submit such a motion by February 29, 2008. Defendants shall submit their response by March 17, 2008. Plaintiffs shall submit their reply, if any, by March 24, 2008.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 25, 2008
Central Islip, NY

\* \* \*

Plaintiffs are represented by Joseph S. Tusa, Esq., and Paul C. Whalen, Esq., Whalen & Tusa, 90 Park Avenue, New York, New York 10016, and G. Oliver Koppell, Esq., G. Oliver Koppell & Associates, 99 Park Avenue, New York, New York 10016. Defendants are represented by Alfred W.J. Marks, Esq., Rosemary Q. Barry, Esq., and Lisa Pepe Whittaker, Esq., Day, Berry & Howard LLP, 875 Third Avenue, New York, New York 10022.