# WHALEN & TUSA, P.C.

*A New York Professional Corporation*
*Attorneys and Counselors at Law*

33 West 19th Street, 4th Floor
New York, NY 10011
Telephone: (212) 400-7100
Facsimile:  (212) 658-9685

October 29, 2010

**BY ECF FILING AND OVERNIGHT MAIL**

Honorable Joseph F. Bianco
United States District Court
100 Federal Plaza
Central Islip, NY 11722

      Re:    *McAnaney, et al. v. Astoria Financial, Inc., et al*.
              Civil Action No. CV-04-1101 (JFB) (WDW)

Dear Judge Bianco:

      I write as counsel for Plaintiffs and the certified Class in the referenced action, after having conferred with counsel for Defendants. As counsel for the parties discussed this afternoon with your law clerk, a dispute has arisen among the parties concerning the distribution of notice to the class that requires Court notification and resolution. That issue is whether the Court-approved Notice of Class Action and Settlement ("Notice") and the Proof of Claim and Release form ("Claim Form" and collectively with the Notice, the "Notice Packet") should be mailed to 42,850 borrowers to whom Defendants' records indicate did not pay any of the five Disputed Fees at issue in this class action. Class counsel opposes sending the Notice Packet to such persons insofar as: i) they are not members of the Class certified by this Court; ii) the parties' Stipulation and Agreement of Class Action Settlement ("Settlement Agreement" at ¶54) agreed to send the Notice Packet only to Class members; iii) the Court-approved Notice states that it should be sent only to "a Class member who paid Disputed Fees during the Class Period;" iv) the Class should not bear the cost to print and mail notices to the non-Class members; and v) sending the Notice Packet to 42,850 non-Class members will be highly confusing to them, may result in unnecessary objections to the parties' Settlement Agreement and will require the use of time by the Court, Class Counsel and the Settlement Administrator to address non-Class Members' claims, questions, concerns and possible objections.

      Defendants have not disputed that their records do not indicate that any of the 42,850 borrowers at issue paid any of the Disputed Fees required for Class membership. Nevertheless, they advocate mailing those 42,850 borrowers the Notice Packet, along with the 158,875 Class members for whom Defendants' records have confirmed payment of the Disputed Fees. Defendants' position is motivated by a desire to send the Notice Packet to borrowers who repaid any residential loan during the Class Period, regardless whether they paid any Disputed Fees, so that no borrower can

potentially claim not be bound by the release in the parties' settlement and the *res judicata* impact of any potential final order and judgment approving the Settlement Agreement. While Defendants are entitled to their Release if the Settlement Agreement is finally approved, only Class members who have not excluded themselves from the parties' settlement can be bound by that release.

Background

On September 19, 2006, the Court certified this lawsuit as a class action and certified the following class of past and current residential borrowers of Defendants:

> All consumers or borrowers in the United States who had or currently have a mortgage or residential loan originated or purchased by any of the defendants and **who wrongfully paid** or will be demanded to pay closing fees, satisfaction fees, discharge fees, prepayment fees (or penalties), refinance fees (or penalties), attorney document preparation fees, facsimile fees, recording fees and any other fees, charges, false debts or finance charges in contravention of their mortgage or loan contracts or applicable laws.

*McAnaney v. Astoria Fin. Corp.*, 2006 U.S. Dist. LEXIS 66941 (E.D.N.Y. Sept. 19, 2006) (Docket No. 72) (emphasis added).

The parties' July 31, 2010 Settlement Agreement adopted that Class definition. *See Docket No. 247-1 at ¶4.* To the extent not produced in discovery, Defendants agreed to produce to Class Counsel all records in Defendants' possession or control demonstrating which of their former residential loan borrowers paid Disputed Fees during the Class Period, and in what amounts. Those Disputed Fee data files were provided by Defendants to Class Counsel, who in turn provided over 207 such files to the Court-appointed Settlement Administrator, Rust Consulting, Inc. Since many of Defendants' files demonstrating payment of the Disputed Fees did not themselves list the borrower's name and address, the Settlement Agreement required Defendants to compile separate lists ("Zero Balance Reports") of potential Class members' names, last-known addresses and loan numbers (but not showing Disputed Fees paid).[1] *See* Settlement Agreement ¶54. Defendants were required to include in the Zero Balance Reports persons they "reasonably believed" were Class members. *Id*. However, Defendants explained that without comparing the Zero Balance Reports to the Disputed Fee data files (which is believed by Class Counsel to have been done for the first time by the Settlement Administrator) Defendants could not be certain that persons listed on the Zero Balance Reports actually paid any of the Disputed Fees, which is required for Class membership. Defendants further explained that their Zero Balance Reports were expected to be over inclusive, since it was impossible for them to omit borrowers who did not pay any Disputed Fees due to the fact that their loans were written down to a zero balance due to: i) foreclosures; or ii) refinancing transactions replaced an old loan with a new loan with the same Defendants.

---

[1] The Settlement Administrator used the unique loan numbers listed in the Defendants' Disputed Fee data files to match Disputed Fees paid with borrowers' names listed in the Zero Balance Reports, which reports also included the unique loan numbers. This process is critical, since the Disputed Fees paid by each Class Member, as demonstrated by Defendants' records, will be printed on the face of the Claim Form mailed by the Settlement Administrator to each Class Member. *See* Settlement Agreement, Exhibit 4 (Proof of Claim and Release Form). While Class members have the opportunity to dispute the amount of Disputed Fees listed on the Claim Forms, a non-Class member who is mailed a Claim Form would list $0 Disputed Fees paid on the face of the Claim Form, reasonably prompting them to either assume an error was made on their Claim Form or question why they received the Notice Packet in the first place.

Earlier this week, in preparation to mail the Notice Packet to the Class, the Settlement Administrator reported to Class Counsel that of the 201,725 names listed on the Zero Balance Reports, it was able to match by loan number Disputed Fees paid for 158,875 Class members. Defendants Disputed Fee data files did not indicate that the remaining 42,850 borrower names listed on the Zero Balance Reports paid any of the Disputed Fees.[2] Class Counsel proceeded to share the Settlement Administrator's conclusions with Defendants' counsel, who addressed the matter with his clients. Defendants agreed that the Zero Balance Reports may be over inclusive based on the methodology used by them to create those reports, and offered no documentary materials to Class Counsel to refute the Settlement Administrator's conclusions. Seemingly corroborating the quality of work performed by the Settlement Administrator, it was able to match nearly 99% of all Disputed Fees identified in Defendants' Disputed Fee data files to names and loan numbers listed in the Zero Balance Reports.

The Notice of Class Action and Settlement agreed by the parties and approved by the Court contains the following question and answer:

**Why Did I Receive This Notice?**

You received this Notice because Defendants reasonably believe based on their records and/or those of their loan servicer that you are a Class member **who paid Disputed Fees during the Class Period**.

Settlement Agreement, Exhibit 3 (*Docket No. 247-1*) (emphasis added).[3] That explanation mirrors the Court definition of the Class, and the parties' agreement in the Settlement Agreement as to who the Settlement Administrator must mail the Notice Packet, which agreement was adopted in the Court's order granting preliminary approval to the Settlement Agreement. *See Docket No. 250*.

Based on the hundreds of Disputed Fee data files produced by Defendants, and the conclusions of the Settlement Administrator, Class Counsel has no basis to reasonably believe that the 42,850 borrowers at issue are Class members, and therefore should be mailed the Notice Packet. Defendants have produced no data to the contrary, and offer only speculation that those 42,850 borrowers "may" be Class members.

Scheduling Issues:

The following deadlines and Fairness Hearing date have been ordered by the Court in the Order granting preliminary approval of the Settlement Agreement, as modified in part by the Court's October 25, 2010 Order:

---

2    Admittedly, a very small percentage of the Disputed Fee data files that were produced by Defendants for 1998 payoffs were reproductions of microfiche data that may have obscured an accurate reading of the loan number.

3    The Court approved the Notice and Claim Form proposed by the parties in "substantially" the forms submitted with the Settlement Agreement. Counsel have subsequently agreed to certain non-material revisions to those documents. If requested, the parties will submit the final versions of the Notice and Claim Form for final Court approval.

*WHALEN & TUSA, P.C.*

| | |
|---|---|
| Deadline for Settlement Administrator to Mail Notice Packet: | November 2, 2010 |
| Claims Deadline (60 days after initial mailing): | December 31, 2010 |
| Objection Deadline (60 days after initial mailing): | December 31, 2010 |
| Opt-Out Deadline (60 days after initial mailing): | December 31, 2010 |
| Final Approval Hearing: | January 6, 2011 |
| Submission by parties of papers in support of final approval (10 business days prior to Final Approval Hearing): | December 21, 2010 |

The Settlement Administrator has advised the undersigned that it will require three (3) business days to print[4] and complete the initial mailing of the Notice Packet after the Court resolves the parties' instant notice dispute. As a result, it appears unlikely that it will be able to complete mailing of the Notice Packet by Tuesday, November 2, 2010. The parties therefore jointly request that the Court approve a further extension of the Settlement Administrator's deadline to complete the initial mailing of the Notice Packet, until three (3) days after resolution of the notice issue addressed in the parties' letters of October 29, 2010. The Court's endorsement of this application will automatically advance forward the deadlines for Class members to file claims, objections and opt-out requests, possibly past the date for the currently-scheduled Fairness Hearing.

The parties raise these scheduling issues with the Court insofar as it may desire to adjourn the Fairness Hearing until a date later in January 2011. If the Court is so inclined, the parties agree that the revised deadlines and/or Fairness Hearing date should be determined before they are printed on the face of the Notice and Claim Form mailed to the Class and posted on the settlement website. Class Counsel requests that the Fairness Hearing not be scheduled after January 31, 2011, insofar has the undersigned will begin a trial in Maryland.

Class Counsel is available for a hearing or telephone hearing to address the matters contained in this letter on Monday, November 1, 2010, if desired by the Court.

Respectfully yours,

/s/ Joseph S. Tusa

cc:   Counsel of Record (By ECF Filing)

---

4   The Settlement Administrator employs an outside vendor to print the Notices and Claim Forms.